CAROLINE DAVISON, Trustee, etc., Appellant, *v.* THE ASSOCIATES OF THE JERSEY COMPANY, Respondents.

D., plaintiff's assignor, and defendant entered into a contract in two separate instruments, by one of which D. agreed to build a house on each one of five lots owned by defendant on or before May 1st, 1859, at a specified sum for each house; by the other, defendant, upon completion of the houses, agreed to convey to D., and D. agreed to purchase the houses and lots for a specified price, to be secured by bonds of D., and by mortgages on the lots; the buildings to be completed, and the bonds and mortgages given on or before August 1st, 1859, or the contracts to be void, at the option of defendant. The buildings were substantially completed by the 1st of May, 1859. Defendant tendered a deed August 11th, 1859, and offered to deliver it on execution and delivery of the bonds and mortgages. D. replied to the tender that he did not accept or reject, but could not deliver the mortgages until the amount was settled. He had, prior to that, tendered mortgages exceeding, by about $10,000, the amount specified in the contracts, and demanded an advance of the excess, claiming that defendant had, subsequent to the making of the contract, agreed by parol to make such advances, which claim was not well founded. In an action for specific performance, *held*, that the refusal of defendant to deliver the bonds and mortgages called for by the contract, did not alone forfeit his rights thereunder; that before defendants could insist upon a forfeiture, they were bound to give D. an opportunity to comply with the demand, after notice that a failure to do so would be treated as a rescission of the contract.

Also, *held*, that a failure on the part of D. to complete the buildings by May 1st, 1859, would not have precluded him from enforcing the contract for a conveyance, if they were completed by August 1st thereafter.

D. took no steps to procure a conveyance, and the lots remained unoccupied until January, 1860, when defendant advertised them for sale. Of this D. had notice. He appeared at the sale, and demanded a deed, offering to execute mortgages, according to the contract. The sale was commenced, but suspended; and in March thereafter defendant sold for a less sum than the contract-price. D. did nothing further

in the matter, and this suit was brought in 1864.   *Held*, that the rights of D., or his assigns, were forfeited by laches; and that plaintiff was not entitled to any relief, legal or equitable.

The bringing of an action of a distinctly equitable character is a waiver, so far as the plaintiff is concerned, of the right of trial by jury, although upon the facts he may be entitled to either legal or equitable relief; and in determining the mode of trial, the court may, as to him, be governed by the nature of the action, as stated in the complaint.

*It seems,* that the rule as to the defendant is different; that he cannot be deprived of a jury trial, in a proper case, because the plaintiff has demanded equitable, instead of legal, relief.

(Argued November 19, 1877; decided December 4, 1877.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of defendant, entered upon a decision of the court on trial at Special Term.   (Reported below, 6 Hun, 170.)

This was an action for the specific performance of a contract for the sale of lands.

The facts are sufficiently set forth in the opinion.

*E. F. Bullard,* for appellant.   A party permitting the completion of the performance of a contract after the time for its completion has expired does not forfeit his right to damages.   (*Ruff* v. *Rinaldo,* 55 N. Y., 664.)   The time specified for the performance of a written contract for the sale of lands is not important where both parties have acquiesced in extending it.   (*Schroeppel* v. *Hopper,* 40 Barb., 425; *Bailey* v. *W. Vt. R. R. Co.,* 18 id., 112; *Glacius* v. *Black,* 50 N. Y., 145, 149; *Johnson* v. *De Peyster,* id., 666; *Jenks* v. *Robertson,* 58 id., 621, 622.)   Hindrance by one party, whereby the other is prevented from completing his part in time, affords a legal excuse.   (*Stewart* v. *Keteltas,* 36 N. Y., 388; 58 id., 621; *Lobdell* v. *Lobdell,* 36 id., 330; *Town* v. *Trow,* 24 Pick., 168, 171; Story on Con., § 977.)

*Edgar S. Van Winkle,* for respondents.   Plaintiff's silent acquiescence for years barred his right to bring an action for specific performance.   (Fry on Spec. Perfm., § 730; p. 320;

9 Pet., 405; 4 Cow., 717; *Ballard* v. *Walker*, 3 J. Cas., 60; Story's Eq. Jur., § 776; *Watt* v. *Rogers*, 2 Abb. Pr., 261; 3 Pars. on Con., 357; *Delavan* v. *Deman*, 49 N. Y., 485; *Page* v. *McDonnell*, 55 id., 299.)   Davison could not, under the facts, recover back any portion of the purchase-money, or money invested by him on the land.   (*Battle* v. *Roch. City Bk.*, 3 N. Y., 88; *Ketchum* v. *Evertson*, 13 J. R., 359; *Chapman* v. *Lathrop*, 6 Cow., 110; *Conway* v. *Bush*, 4 Barb., 564; *Cornwall* v. *Haight*, 8 id., 327; *Vail* v. *Rice*, 5 N. Y., 155; *Benson* v. *Winans*, 8 id., 182; *Green* v. *Reynolds*, 2 J. R., 207; *Van Schaick* v. *Winee*, 16 Barb., 89; *Viele* v. *T. & B. R. R. Co.*, 20 N. Y., 184; *McKnight* v. *Dunlop*, 4 Barb., 36; *Pratt* v. *Gulick*, 13 id., 297; *Champlin* v. *Rowley*, 18 Wend., 187; *Bement* v. *Smith*, 15 id., 493; *Sands* v. *Tayler*, 5 J. R., 395; *Bogart* v. *O'Regan*, 1 E. D. S., 590; *Cooks* v. *Moore*, 1 Sand., 297.)   Defendants are not liable in this action.   (*Bishop* v. *Houghton*, 1 E. D. S., 533; *Fowler* v. *Jones*, 1 Robt., 87; *Cleveland* v. *Burnett*, 25 Barb., 532; *Newborn* v. *Bronson*, 3 Kern., 587; *Marquat* v. *Marquat*, 12 N. Y., 341; *Emery* v. *Pease*, 20 id., 62; *Wills* v. *Smith*, 7 Paige, 22.)   The delivery of the bonds and mortgages, as agreed upon, was a condition precedent to any right of action.   (*Chapman* v. *Lathrop*, 6 Cow., 110; *Conway* v. *Buck*, 4 Barb., 564; *Cornwall* v. *Haight*, 8 id., 327; *Vail* v. *Rice*, 5 N. Y., 165; *Brund* v. *Winan*, 8 id., 182; *Green* v. *Reynolds*, 2 J. R., 207; *Van Schaick* v. *Winan*, 16 Barb., 89; *Viele* v. *T. & B. R. R. Co.*, 20 N. Y., 184.

ANDREWS, J.   The contract of May 25, 1858, between Davison and the defendants, was annulled by the express agreement of the parties, when the contract of December 8, 1858, was executed.   The latter contract was a new and substituted agreement, covering the entire subject of the former one, and the legal and equitable rights of the parties in this action depend solely upon the contract of December 8, 1858, and the subsequent transactions between them.   (*Price*

v. *McGown,* 10 N. Y.,465; Fry on Specific Performance, 201.)   That contract was contained in two instruments of the same date, executed at the same time.   By one, called the building contract, Davison agreed to furnish the materials, and to complete the five houses on the five lots of the defendants in Jersey City on or before the first day of May, 1859, and the defendants agreed to pay him therefor $1,005 for each house, in installments, as the work progressed. By the other, the defendants agreed, upon the completion of the houses, to sell and convey the houses and lots to Davison, for the sum, in the aggregate, of $22,800, to be secured by the bonds of the purchaser, and by separate mortgages on the several lots, as stated in the agreement; and Davison agreed to purchase and pay for the property on the terms specified.   The contract contained the provision that the buildings "are to be completed, and said bonds and mortgages given, on or before the 1st day of August, 1859, or this contract and said building contract shall be void, at the option of the party of the first part" (the defendants). The building contract, as will be observed, provided that the buildings should be completed on or before the 1st of May, 1859, and the other, that they were to be completed and the bonds and mortgages given on or before the 1st of August, 1859, or the contracts, at the option of the defendants, should be void.   Construing the two instruments together, it seems to be clear that, if the purchaser completed the buildings by the latter date, and was then ready to give the bonds and mortgages specified, he would be entitled to a conveyance. In other words, a default on his part to complete the buildings by the 1st of May, 1859, according to the terms of the building contract, would not preclude him from enforcing the contract for a conveyance, if they were completed by the 1st of August next ensuing.   This question is not, however, very material in this case, as it is found by the referee that the houses were substantially completed on the 1st of May, and the tender by the defendants of the deed on the 11th of August, 1859, and their offer to deliver it, upon the

execution by the purchaser of the bonds and mortgages according to the contract, was an admission on their part that the contract had been performed in respect to the completion of the buildings; or, at least, it operated as a waiver of any default by the purchaser prior to that date.

The effect of the tender by the defendants of the deed on the 11th of August, 1859, in connection with the contract and acts of Davison on that occasion, was the subject of considerable controversy on the argument. The court found, in respect to that transaction, that the defendants tendered to Davison a deed, and demanded the bonds and mortgages provided in the written contract, and that Davison replied that he did not accept or reject the deed, but could not deliver the mortgages until the amount was settled; and that the defendant's agent made no reply, but withdrew. There was no uncertainty as to the amount of the bonds and mortgages, which the purchaser was to give, looking to the written contract only; but the explanation of Davison's statement, that he could not give the mortgages until the amount was settled, is found in his previous acts and conduct. On the 30th of July, he tendered to the defendant's president bonds and mortgages upon the property, exceeding by about $10,000 the amount specified in the written contract, and demanded a deed, and, also, that the defendants should advance him the excess of the mortgages beyond the amount of $22,800, in money; and this advance as the complaint and proof shows, was claimed by Davison, on the ground, that the defendants, by an oral agreement made subsequent to the written contract, in consideration of a change made by him, at their request, in the plan of the buildings, which increased their cost, promised to advance this additional sum. This alleged oral agreement was not found, and the court, in substance, refused to find that any agreement was made by the defendants to advance any sum beyond the amount specified in the original agreement. There was evidence, on the part of the plaintiff, tending to show an agreement for an additional advance of the sum of

about $3,500; but this was controverted by the defendants, and was a question of fact to be determined on conflicting proof.   Upon the proof and findings, it must be assumed that the defendants did not agree to make advances to Davison beyond those specified in the contract of December 8th, and that he was not justified in refusing to accept the deed, and give the bonds and mortgages as required by the defendants. The defendants insist that their obligation to convey the land was terminated by the refusal of Davison to give the bonds and mortgages on the tender of the deed.   The refusal of Davison would doubtless have justified the defendants in rescinding the contract, but we are of opinion that his qualified refusal to accept the deed, and give the bonds and mortgages demanded, on the ground that the original contract had been modified, did not alone forfeit his rights under the contract. Forfeitures are not favored, and a strict fulfillment in point of time of a contract for the sale and purchase of land by the party claiming specific performance, is not in general a condition precedent to relief.   The qualified refusal of Davison was not equivalent to an absolute refusal to carry out the written contract, and the defendants, before they could insist upon a forfeiture by reason of the refusal of Davison, were bound, we think, to give him an opportunity to comply with the demand, after notice that a failure to do so would be treated by the defendants as a rescission.   (*Reynolds* v. *Nelson*, 6 Mad., 18.)

Assuming, therefore, that Davison might, after the interview of August 11, 1859, have tendered performance and entitled himself to a conveyance, this right was nevertheless forfeited by his subsequent laches.   The premises remained unoccupied until January, 1860.   Davison apparently abandoned the possession.   The houses were left partly unfinished and exposed to the weather.   Davison took no steps to procure a conveyance.   He did nothing to indicate that he intended to complete the contract.   The defendants in January, 1860, treating the contract as rescinded, advertised the lots, with others, for sale at public auction on the 18th of that month.

Of this proceeding Davison had notice, and he appeared at the sale, and there demanded of the defendants a deed, and offered to execute mortgages according to the contract of December, 1858. The sale was suspended for half an hour, and the president and officers of the company retired for consultation, and returned ; and, without making any reply to Davison, directed the auctioneer to proceed with the sale, and he sold some lots adjoining the lots in question, but the prices being unsatisfactory, the sale was suspended. Subsequently, in March, the defendants sold the lots embraced in Davison's contract for several hundred dollars less than the sum he had agreed to pay for them. There is nothing to impeach the *bona fides* of the sale, or to show that the lots were not sold at the best price which could have been obtained. Davison did nothing in the matter after the 18th of January, and prior to the sale in March. He made no tender of mortgages. He had, and so far as appears, sought no interview with the defendants. He asserted no rights, and it was not until 1864, four years after the sale, that this action was brought.

Under these circumstances, the judge at the trial properly held that the plaintiff was not entitled to any relief, legal or equitable. The advertisement of the lots for sale in January, 1860, was known to Davison, and was equivalent to express notice that the defendants regarded the contract as rescinded, and their direction to the auctioneers on the day of the sale to proceed with the sale, after Davison had demanded a deed, and offered to execute the mortgages, was also notice that they persisted in treating the contract as rescinded. It was then the duty of Davison to act promptly and to tender the mortgages, and bring his action to enforce performance of the contract. He not only omitted to execute and tender the mortgages, but he and his assignee have lain by for four years before bringing an action. The appeal to a court of equity for relief upon these facts ought not to be entertained. The laches are not excused. It would be an unwarrantable extension of the doctrine in equity, that time is not of the

essence of such a contract, to hold that a party, after a delay of four years under circumstances like these, could still enforce the contract. The complaint, therefore, was properly dismissed, as no cause of action, either equitable or legal, was established.

At the opening of the trial the plaintiff demanded a trial by jury, on the ground that it appeared on the former trial, that the defendants had conveyed the lots before the commencement of the action, and that the evidence would now show a cause of action at common law for damages only. The defendants objected, and the court denied the demand of the plaintiff, and the plaintiff excepted. We think the motion was properly denied. The complaint is framed for equitable relief. It is drawn in the ordinary form of a bill for specific performance. It sets out the contract, its breach by the defendants, the assignment to the plaintiff, and avers that she is ready to perform the contract, and pay any balance which may be due thereon to the defendants, if any balance shall remain, after an accounting by them for the rents and profits of the premises, and concludes with a demand for a specific performance, and an accounting, and for general relief. The answer disclosed the fact that the defendants had sold the lots, and the plaintiff made no attempt to amend the complaint. The case upon the pleadings was one triable by the court, and not by a jury. The plaintiff elected to bring an equitable action, and thereby elected the forum in which it should be tried. The constitutional right of trial by jury may be waived, and the bringing of an action of a distinctly equitable character, as disclosed by the complaint, is a clear waiver, so far as the plaintiff is concerned, of that mode of trial, although upon the facts he may be entitled to either legal or equitable relief. The court, in determining the mode of trial, may, as to him, be governed by the nature of the action as stated in the complaint. The defendant does not stand in the same position. He cannot be deprived of a jury trial in a proper case, because the plaintiff has demanded equitable instead of legal relief.

Davison was asked on the trial whether, at the time of the tender of August 11th, he was willing and ready to execute the mortgages, if Jackson (the defendants' agent) had offered them to the witness. The defendants objected to the question, and the objection was sustained. Aside from the consideration that the question called for the undisclosed intent of the witness, which was not admissible upon the issue in this case, the evidence was not material in the view we have taken of that transaction. The fact that Davison declined on that occasion to give the mortgages did not, under the circumstances, affect his rights under the contract. His subsequent laches defeated his right to relief.

The plaintiff's counsel made various requests to find, which were refused by the court. We have carefully examined them. Some of them are founded upon the assumed existence of the contract of May 25, 1858, which, as we have stated, was canceled by agreement of the parties. Others are not justified by the proof; and in the cases where the proof would have justified the finding requested, the fact, if found as requested, would not affect the judgment.

Upon the whole case, we are of opinion that the judgment should be affirmed.

All concur, except ALLEN, J., absent.

Judgment affirmed.