Lawrence, J.
I am free to say that when the point was first suggested to me I was inclined to think that it was not well taken, for the reason that my own experience and my observation for many years past has been that in such actions the attorney-general has almost always appeared by special or local counsel. But upon reference to the statute* I find that it is provided that:
“The attorney-general shall be and is hereby authorized to employ additional counsel in prosecuting and defending suits and proceedings in which the people are a party, or are interested, at any general or special term, or at chambers of the supreme court in any of the judicial districts of the State, whenever the discharge of other official duties shall prevent him from attending in person.”
It is quite obvious that the language of the statute *307 does not embrace a trial at the circuit court, the language being: “ the attorney general is authorized to employ additional qounsel at any general or special term, or at chambers of the supreme court in any of the judicial districts of the state.” This is not a general term or special term, nor is it the chambers of the supreme court, but it is a circuit court.* I should have been inclined to think that, irrespective of that statute, the attorney-general had a general power to employ counsel in actions of this character, but the court of appeals in a very recent case have construed the statute, and it certainly would be an assumption on my part, sitting as a circuit court judge and as a member of an inferior tribunal, to undertake to impose a limitation upon the language employed by the court of appeals which the court certainly have not in terms imposed.
The case to which I refer is the case of Attorney-General v. Continental Life Ins. Co., which, so far as I have been able to ascertain, has not yet been reported in the regular reports of the court, bat which is to be found in the Daily Register of April 19, 1882. In that case special counsel had been employed by the attorney-general in the matter of the Continental Life Insurance Company, and certain allowances had been awarded to defendant’s counsel for services which they were alleged to have performed. It was conceded, on the argument of the case, that the allowances, if it were in the power of the court to grant allowances in such cases, or of the attorney-general to employ special counsel in such cases, were reasonable and proper, and the main point on which the case turned was as to the power of the attorney-general to employ counsel. The *308 opinion was rendered by Chief Justice Andrews, and. was concurred in by all the judges of the court who were present. In that case the court say :
“We have not been able to find any statutory authority conferred upon the attorney-general to appoint special counsel to act generally for him in the conduct of suits or proceedings in which the State is interested. The Revised Statutes (1 R. 8. 164, § 15) authorize the governor to employ counsel to assist the attorney-general in any suit or proceeding prosecuted or defended by him in behalf of the State. By chapter 357, Laws of 1848,* the attorney-general is authorized to employ additional counsel in prosecuting or defending suits in which the people are a party, or are interested, ‘ at any general or special term or at chambers,’ when official duties prevent his attending in person.
“This statute, as will be observed, limits the authority conferred to the appointment of counsel to appear at a term of court or at chambers, and then only when the attorney-general cannot be present in person. We find no other general statute conferring upon the attorney-general authority to employ special counsel on behalf of the State.
“It seems to be quite plain that the statutes referred to did not authorize the general retainer under which the petitioner in this case acted. The retainer was not confined to an appearance by the petitioner in court or at chambers, nor was it made upon the special exigency contemplated by the statute.
“ Independent of the statute, there seems to be no authority vested in the attorney-general to employ special counsel. In view of the statutes regulating the employment of counsel, such authority cannot be deemed to be vested in that officer as incident to his office. Provision is made for the appointment of deputies to assist the attorney-general. This general pro *309 vision and the statute authorizing the governor or the attorney-general, in certain cases, to appoint special counsel, seem plainly to exclude the inference of an authority in the attorney-general to appoint special counsel outside of the statute.”*
It will be observed that in that opinion the ’court say that not only is the authority of the attorney-general limited by the express provisions of the statute, but that he has no authority incident to his office to employ counsel.
A very elaborate argument was had in this case on this point on Friday last, and I was much pressed by counsel with the point that it would be utterly impossible for th'e attorney-general to perform the duties of his office, if such a construction were given to the statute as is contended for by the defendant’s counsel. With that consideration I, of course, cannot deal. The highest court of the State has said that no authority-exists in the attorney-general outside of that statute to employ counsel, and they have also said, and the statute plainly says, that the statute does not give him power to employ special counsel in such a case as this. And apart from that consideration, even if there were any doubt in my own mind as to the exact force of the language which the court have employed, it is the right of the defendants to insist that when this action is- *310 tried, it shall be tried by counsel who are beyond all dispute entitled to represent the State. Should they succeed upon the trial of this action, it is their right to have a judgment which shall be binding upon the State.
Perhaps it is unnecessary for me to say anything more, but I will observe, in conclusion, that the attorney-general himself, in his communication to the Legislature dated April 11,1882, seems to have concurred in the view which I have expressed, and seems to have put the same construction upon the decision of the court of appeals in the case to which I have referred as that which I have put on it. The question there was presented as to the power of the attorney-general, or the State, to have certain cases opened in which orders or allowances had been made, and without reading the whole language of the opinion, I will refer to a portion of it. The learned attorney-general says :
“The court of appeals has this day decided that the attorney-general had no power to broadly authorize the special counsel to represent him upon the conduct of these litigations, and, therefore, it impliedly follows that the service of papers on such special counsel, and his various appearances for the attorney-general, were unauthorized by law. I am- of the opinion that under this decision the attorney-general may ask the courts with propriety to review the various orders granted upon the ground that the State has not been legally represented upon the hearing in'those cases where the action was brought by the attorney-general.”
In view of that opinion, and in view of the opinion of the court of appeals, I ought not, even if I .entertained a doubt as to the construction of this statute, to force these defendants to trial, when if a judgment should be obtained in their favor an application might subsequently be presented to the court to open that judgment and set aside the verdict of the jury on the *311 ground that the State had not been legally represented. Therefore, in obedience to the opinion of the court of appeals, I must sustain the objection of the defendant’s counsel and I must direct that this case stand over until the attorney-general or one of his lawfully authorized, deputies appears here on behalf of the State. _
The action was thereafter brought on for trial, and witnesses examined upon both sides. At the close of the case a motion was made to dismiss the complaint. The evidence received apd grounds of such motion are fully stated in the opinion.
Leslie W. Russell, attorney-general, and L. E. Chittenden, for the plaintiffs.
Burton N. Harrison, for defendant.
' Lawrence, J.
When the trial of this action was adjourned last week, a motion was- pending, on the part of the defendants, fora dismissal of the complaint on various grounds, some of which related to the jurisdiction and practice of the court, some to the form of the proceeding, and some to the evidence adduced by the plaintiffs to sustain their alleged cause of action. I will briefly examine the various grounds of the motion, as thus classified by me. In the first place, I understand it to be contended by the learned counsel for the defendant that all the cases cited by the attorney-general were suits in equity, and that this ¡ court has no jurisdiction in equity. By a reference to the complaint it will be seen that the action is brought for the purpose of obtaining both legal and equitable relief, to wit, to restrain and to abate the alleged nuisance, and for damages for the injury alleged to have been sustained therefrom. The case, it appears, was originally placed upon the special term calendar, but after examination, the learned justice there pre *312 siding directed it to be tried at circuit. This I regard, in substance and effect, as a direction that all the issues be tried at circuit. If this view is correct, the case of Parker v. Lanney (58 N. Y. 469) is directly in point. That was an action brought to recover damages for alleged wrongful acts amounting to a nuisance, and to restrain the continuance thereof, and, the case being on the special term calendar, the defendant demanded that it be tried by a jury, and the court so ordered. The case was tried before a jury and a verdict rendered for the plaintiff for $25 damages. The trial judge thereafter found certain additional facts as to the location of the premises and the extent and character of the acts complained of, and ordered judgment for the plaintiff perpetually restraining the defendants from the further commission of those acts, with the damages found by the jury, and costs to be taxed. The general term reversed the order denying a motion on the part of the defendants to set aside the findings and decision of the court, the judgment and all other proceedings subsequent to the verdict, and set aside said findings, and also ordered the cause to be moved at the special term on the equitable cause of action set forth in the complaint. On appeal, by both sides, to the court of appeals, it was held that “ the verdict of the jury necessarily finds that the defendants had committed some or all of the acts charged, presumptively all, and that such acts did produce the injurious result to the plaintiff’s house, as charged. It, therefore, said the court, authorized a judgment restraining said acts. Such judgment was, therefore, properly ordered by the court.....The judgment, being authorized by the verdict, should stand as final between the parties.”
The court, therefore, reversed the order of the general term, and affirmed the order of the special term, so far as it denied the defendant’s motion to set aside *313 the judgment; and it held that it was irregular for the trial judge to find additional facts, upon which, together, with the verdict, judgment should be given. This case plainly holds that where an action, in which both legal and equitable relief is demanded in the complaint, is directed to be tried at a circuit court, and the jury have passed upon the questions of fact, it is appropriate and competent for the circuit judge to render a judgment not only for the damages found by the jury, but also restraining the defendants from the further commission or continuance of the nuisance. I regard the case as conclusive authority for the position, that should this case be submitted to the jury, and a verdict found in favor of the plaintiffs, it would be competent for me not only to render a judgment for the abatement of the nuisance, and for the damages which might be found by the jury, but also a judgment restraining the continuance of the nuisance.
If this action is to be regarded both as legal and equitable in its character, then the case of People v. Vanderbilt (26 N. Y. 287) is an authority which holds that an action may be maintained by the People of the State, through the attorney-general, for the removal of an alleged nuisance, and for an injunction restraining its continuance. It is, however, contended, by the learned counsel for the defendant, that this being a jjroceeding by the People, an indictment or an information is the only remedy to which the public can resort for redress of their grievances. I was very much inclined, when the point was first presented, to sustain that view of the case, on the authority of People v. Corporation of Albany (11 Wend. 539, 543); but on the authority of the more recent cases to which I have referred, and regarding this case as both equitable and legal in its character, I am of the opinion that the objection cannot be sustained.
These conclusions lead me to the consideration *314 of the objections which were taken by the counsel for the defendants to the character and effect of the evidence given by the plaintiffs for the purpose of establishing their alleged cause of action. Now it must be conceded that the defendants in this case start (assuming them to be a telegraph company) with a strong presumption in their favor. The statutes of this State provide for the formation of telegraph companies, and authorize them “to construct lines of telegraph along and upon any of the public roads and highways, or across any of the waters within the limits of this State, by the erection of the necessary fixtures, including posts, piers and abutments for sustaining the cords or wires of such lines, provided the same shall not be so constructed as to incommode the public use of said roads or highways, or injuriously interrupt the navigation of said waters, nor shall this act be so construed as to authorize the construction of any bridge across any of the waters of this State (2 R. S. 633, § 5, 6th ed.). See also 2 R. S. 635, where power is given to a telegraph association or company to erect and construct, from time to time, the necessary fixtures for such lines of telegraph upon, over or under any of the public roads, streets and highways, and subject to the restrictions in the said recited act cofitained. The first provision is from the Laws of 1848,' chapter 265, and the second from the Laws of 1853, chapter 471, amending the act of 1848. The defendants were duly organized under those statutes, and they have obtained from the superintendent of incumbrances in the department of public works, a permit authorizing them to erect a line of telegraph poles in this city. The erection of telegraph poles in Twenty-first street cannot therefore be deemed per se a nuisance. On the contrary, prima facie the erection of poles in said street by the defendants would be legal, because that which the lawful authority permits can never be a *315 nuisance (see Davis v. Mayor, &c. of N. Y., 14 N. Y. 506, 524, 525 ; Easton v. New York and Long Branch R. R. Co., 24 N. J. 49).
But the plaintiffs contend that while it may be lawful and proper for the defendants to erect and construct a telegraph line, it must be constructed so as not to incommode the jjublic use of the street, and that the fixtures and poles erected must be necessary, and they claim that in consequence of the height and size of the poles in question, the public use of said street is incommoded, and that said poles as constructed are unnecessary. If this be true in point of fact, it cannot be said that the erection of the jtoles by the defendant is a lawful act, nor can the doctrine laid down in the cases to which I have just referred be invoked to defeat this action. It has frequently been held that whether any alleged encroachments upon a public or private right are a nuisance or not is a question of fact (see People y. Horton, 5 Hun, 516, 520, opinion of Gtl-BJ5RT, J.). The learned counsel for the defendant claims that as by the evidence of Mr. Brooks, it appears that at the time when these poles were erected, there was no one in the United States of America who could construct a subterranean telegraph, the witness being himself then in Europe ; that there is no evidence to go to the jury upon the question of nuisance, and I understand him to argue that the testimony of Brooks entirely overcomes any opinion which the witness, Chester, may have expressed as to the feasibility of constructing a subterranean line. Even if this be so, there is evidence in the case, slight perhaps and vague in its character, tending to show that poles much smaller and occupying much less space would have been adequate for the defendant’s purpose, and also that the poles as constructed are dangerous to life and property in case of fire. If there is any evidence, however slight, tending to prove the plaintiff’s cause of action, the rule is *316 that it is not within the power of the court to dismiss the complaint, or order a nonsuit. Nor can the court grant a nonsuit on the assumption that the plaintiff’s witness is not to be believed. Furthermore, in determining the propriety of a nonsuit, the court is legally bound to assume the truth of the facts which the testimony of the plaintiff' legitimately conduces to prove, although their correctness may be controverted by the defendant’s witness.
Indeed, it has been held by the court of appeals in the case of Colt v. Sixth Avenue R. R. Co. (49 N. Y. 671): “ That it is not enough to justify a nonsuit that a court upon a case made might, in the exercise of its discretion, grant a new trial. It is only where there is no evidence in law which, if believed, will sustain a verdict, that the court is called upon to nonsuit; and the evidence may be sufficient in law to sustain a verdict, although so greatly against the apparent weight of evidence as to justify the granting of anew trial.” I do not see, on the evidence as it stands, how under these decisions I can consistently nonsuit the plaintiff on the ground that there is no evidence tending to show that the structures erected by the defendant incommode the public use of the street, or that as constructed they are unnecessary fixtures for the proper and reasonable transaction of the defendant’s business. In arriving at this conclusion I wish, however, to be distinctly understood as not intimating any opinion as to the weight to be given to such evidence by the jury. The evidence is in the case, and I cannot without violating rules which it is well settled should control in the conduct of a trial before a court and jury, refuse to submit the evidence to the jury.
Something was said in the argument about no damages having been shown to have been sustained in this case by the plaintiffs. The observations which I have made in regard to the points already discussed render *317 a lengthy examination of that objection to the cause of action unnecessary. I will dispose of it, therefore, with the remark that if the plaintiffs should succeed in establishing to the satisfaction of the jury that the poles in question do incommode the public use of the street in an unnecessary and unreasonable manner, not warranted by the statutes, the plaintiffs will be entitled, at least, to recover nominal damages, and that a nonsuit is properly denied if the evidence shows that the plaintiff is entitled to recover even nominal damages (see Van Rensselaer v. Jewett, 2 N. Y. 135).
For these reasons the motion to dismiss the complaint, on all the grounds stated by the defendant’s counsel, will be denied, and the proper exceptions will be allowed.
Upon the submission of the case to the jury, after the evidence on both sides was in, the following charge was delivered.
Lawrence, J.
[After stating nature of action.]—■ On the part of the defendants it is distinctly denied that the structures erected by the defendants are a nuisance. A nuisance is defined by the books to be anything that unlawfully worketh hurt, inconvenience or damage ; and one of the writers says that the element of illegality should be added to the definition given as above, for many acts which would hurt, inconvenience or damage when legalized cease to be a nuisance. For example, if a corporation obstructs a highway by putting down iron rails, to the inconvenience of passers, it is a nuisance, if they are not properly authorized, otherwise if they are. Now, we must assume, for the purpose of this trial, that this corporation was organized under the general statutes of the State of New York relative to the formation of telegraph companies, and from two of these statutes I propose to read you an extract. One of the statutes *318 provides that “such association is authorized (that is, a telegraph association) to construct lines oí telegraph along and upon any of the public roads and highways, or across any of the waters within the limits of this State by the erection of the necessary fixtures, including posts, piers or abutments, for sustaining the cords or wires of such lines, provided the same shall not be so constructed as to incommode the public use of said roads or highways, or injuriously interrupt the navigation of said waters ; nor shall this act be so construed as to authorize the construction of any bridge across any of the waters of this State.” A subsequent statute provides that “ such association ” (referring to a telegraph association) “ is authorized to erect and construct from time to time the -necessary fixtures for such lines of telegraph upon, over or under any of the-public roads, streets and highways, and through, across or under any of the waters within the limits <?f this State, subject to the restrictions in the said recited act contained,” which is the one I have just read to you, “and also to erect and construct such fixtures upon, through or over any other land subject to the right of any owner or owners thereof to full compensation for the same.”
Now, in this case, it therefore appears that there are statutes of this State which authorize telegraph companies to erect posts or poles upon the public streets under certain conditions, and if those conditions have been complied with, then I charge you that, as matter of law, the structures in Twenty-first street cannot be pronounced a nuisance, for, as was said by a very eminent judge, in another State: “A work authorized by a legislature cannot be adjudged a nuisance, if executed in an authorized manner, and in an authorized place and, as was said by one of the most eminent judges in this State, in delivering an opinion of the court of appeals in a very celebrated *319 case: “Any unauthorized continuous obstruction of a public highway or street is a public nuisance, but that which is authorized by competent legal authority cannot in law constitute a nuisance.” You heard me say yesterday that the defendants in this case started with the presumption in their favor ; they start with these two statutes of the State, which authorize them to construct (assuming them to be a telegraph company) telegraph poles in the street; and you also heard me say that I should send the case to the jury, for the reason that the statutes contained the two limitations which I have already read to you, and which I need not repeat. The burden of proof is upon the plaintiffs—the People. They have tendered the issue, and it is for them to show that the telegraph poles, having been authorized by the statute under conditions, .are in violation of those conditions. If they do not, I charge < you that the defendant is entitled to a verdict. I do not propose, gentlemen, to detain you for any length of time by going over the evidence. You have listened to it, as I know, with very great care and very great attention* and the point you are to consider is whether —not according to your own opinion, but upon the evidence given by the witnesses produced by the two parties upon the stand—it is established that these poles incommode the public use of the streets, or are unnecessary for the transaction of the defendant’s business. If you do not find that, it is your duty to find a verdict in favor of the defendants.
It appears, gentlemen, that we have had before us on either one side or the other, some of the most distinguished electricians and some of the most experienced telegraph constructors in the city, or perhaps in the United States of America, and you have heard what they said pro and con in regard to the propriety of erecting the poles in Twenty-first street in the manner in which they are erected and of placing the wires *320 thereon in the manner in which they are placed. I deem it my duty to say to you, that this case is to be decided upon the evidence, and upon the evidence alone. The fact that we personally dislike the telegraph pole in front of our residences does not authorize either the jury or the court to undertake to change the law; and as counsel has alluded to a remark which the court made yesterday in regard to the legislature, I also deem it my duty to say that if those poles are constructed as the statute requires there is no relief which either you or I can afford to the plaintiffs. The relief is with the legislature, and the people are probably able to send competent representatives to the legislature to make their laws. If they are not, neither you nor I can afford them any relief for their grievances. I also deem it my duty to say, that some consideration is due to the necessities of the city, the magnitude of its business interests, and the wants and requirements of its people. We cannot always stand on our extreme rights. Perhaps I can not do better in regard to that, than to read you a short extract from another opinion in the court of appeals, where the question was whether a certain thing was or was not a nuisance. The judge says:
1 ‘ Persons living in organized communities must suffer some damage, annoyance and inconvenience from each other. For these they are compensated by all the advantages of civilized society. If one lives in the city he must expect to suffer the dirt, smoke, noisome odors, noise and confusion incident to city life. As Lord Justice James beautifully said in Salvin v. Northbrameport Coal Co. (9 Law R. Ch. Appeals, 705), 4 If some picturesque haven opened its arms to invite the commerce of the world, it is not for this court to forbid the embrace, although the fruit of it should be the sights and sounds and smells of a common seaport and ship-building town which would drive the dryads and their masters from their ancient solitudes.’ ” If *321 you come to the conclusion, gentlemen of the jury, on all the evidence, that these telegraph poles are unnecessarily large, or that they are unnecessary for the prosecution and transaction of the defendant’s business, that they do incommode the public use of the streets in an improper manner, then you will render a verdict in favor of the plaintiff. As to the question of damages, no actual.damage has been proven ; but if you come to the conclusion that the plaintiffs are entitled to recover, it will then be your duty to render a verdict for nominal damages. But I do not wish to be understood, because I comment on the subject of damages, as intimating any opinion upon the question whether there should or should not be a verdict in favor of the plaintiffs. It is my duty to charge the jury in regard to all the different phases of the case.
Mr. Chittenden.
I want to make this suggestion, whether, if the jury should find for the plaintiffs, it is not necessary that they should find a special verdict. *
The Court.
Gentlemen, you will answer these questions:
1. Are the telegraph poles and fixtures constructed by the defendants in Twenty-first- street so constructed as to incommode the public use of said street ?
2. Are the telegraph poles and fixtures erected by the defendants in Twenty-first street between Fifth and Sixth avenues unnecessary for the transaction of the defendant’s business %
3. In case you should find that they are, and you should answer those two questions against the defendants, what are the damages which the plaintiff has sustained % If you should find these two questions in favor of the defendants, that the poles as constructed are necessary for the transaction of their business, and *322 that they do not incommode the public use of the street, then yon will find a verdict for the defendants.*

L. 1848, p. 477, c. 357, § 2; same stat. 1 R. S. 7 ed. 478.

 Compare People ex rel. Nichols v. Cooper, 79 N. Y. 590 ; reversing 18 Hun, 530 ; Matter of Finch, 2 Monthl. L. Bul. 64. The same construction would seem to apply to cases tried before a referee, and in the superior city courts.

 Above cited in note.
*309 * This is all in the opinion of the court of appeals here quoted from that related to this subject, except that the court add : “The services rendered by the petitioner were rendered in pursuance of a retainer by the attorney,general, much more comprehensive than was authorized, and there would be much difficulty in justifying the allowance in this case on that ground alone. But we need not determine this question; for we prefer to place our decision on the broader ground that allowances to the attorney-general for services of special counsel employed by him to aid in the settlement and adjustment of the affairs of insolvent corporations in the hands of receivers, to be paid out of the fund, are not authorized.”
The case will probably appear in 88 N. Y.

 Under Code Civ. Pro. § 1187, discretionary with the judge.

 The jury disagreed.