, LUTHER L. DEAN and Others, Appellants, *v.* WILLIAM J. BENN and Another, Respondents.

*Action to enjoin a nuisance and to recover damages — an equity action, entitled to be tried as such — acquiescence by a riparian owner in the building of a dam below him — equitable estoppel by silence and acquiescence and settlement of boundary line.*

| | |
|---|---|
| 69 | 519 |
| 142a | 684 |
| 69 | 519 |
| 88 | 113 |

The complaint, in an action brought by riparian owners, on whose premises was a mill operated by a water wheel, alleged that the defendants, who maintained a dam and operated a mill on the same stream next below the plaintiffs, by their dam wrongfully raised the water of the stream and set it back upon the plaintiffs' wheel, impairing its efficiency, and stated that such flooding existed when the action was commenced and had existed for some time before ; the complaint prayed that the plaintiffs might recover the damages already sustained, and that the defendants be perpetually enjoined and restrained from continuing the unlawful flooding.

*Held,* that the action was an equity action, governed as to the trial of the issues therein by the law applicable to equity cases; that the defendants had no absolute right to the trial of such issues by a jury; and that in regard to questions submitted by it to the jury, the trial court had power to reverse, disregard or modify the findings of the jury.

The evidence showed that the dam maintained by the defendants had been built by their grantor, of such a height that it would injuriously flood the plaintiffs' land, to the plaintiffs' knowledge, but that the plaintiffs made no objection thereto at the time, but kept silence, and without putting the builder of the dam in equal knowledge of the fact, permitted him to incur large expense in creating the defendants' water power and building the structure connected therewith; and that in the following year, the plaintiffs exchanged deeds with the builder of the dam, settling the boundary line between them upon the stream, without making any claim that the dam set back water upon their premises.

*Held,* that the acquiescence of the plaintiffs in the erection of the dam to such a height as to cause the damages complained of, together with their silence at the time of the exchange of deeds, prevented a recovery by them.

APPEAL by the plaintiffs, Luther L. Dean and others, from a judgment of the Supreme Court, entered in the office of the clerk of Montgomery county on the 5th day of February, 1892, upon a decision of the court rendered after a trial at the Montgomery Circuit, dismissing the plaintiffs' complaint.

The 18th finding of fact made by the trial judge, referred to in the following opinion, was as follows:

"In 1888, said Austin (the defendants'. grantor) and the plaintiffs settled a long-standing dispute about the boundary line between the said premises of the plaintiffs and the said premises of the defendants; they divided the disputed territory, Austin conveying to plaintiffs the upper portion, and they conveying to him the lower portion and paid him $500; the plaintiffs at that time made no claim to Austin that his dam set back water on their premises. Austin conveyed the lands in question believing that plaintiffs had no such claim; such claim was then, in no manner, referred to."

*W. L. Van Denbergh* and *Matthew Hale,* for the appellants.

*Edward P. White,* for the respondents.

HERRICK, J.:

It seems to me that plaintiffs acquiesced in the erection of the dam to such a height as to cause the damage, and that such acquiescence, together with their silence at the time of the exchange

of the deeds mentioned in the 18th finding of fact, page 114 of the case, should prevent a recovery by them. I see no occasion for another opinion; it was sufficiently discussed by Judge TAPPAN. (See, also, §§ 816–818 of Pomeroy's Eq. Juris.)

The judgment must be affirmed.

MAYHAM, P. J., and PUTNAM, J., concurred.

Judgment affirmed, with costs.

The following is the opinion of the trial court:

TAPPAN, J.:

Plaintiffs are the owners and in possession of the premises on Chuctanunda creek, in the town of Amsterdam, N. Y., on which are situated the Park Knitting Mills. Such mills are propelled by water, drawn from the pond above them.

The defendants are the owners of lands upon said creek, next below the lands and mills of plaintiffs, the defendants' mills being propelled by water drawn from a pond created by a dam extending across said creek.

The complaint claims that the defendants wrongfully, by said dam, raised the water in said creek, and flowed the same back from their said lands, and to the wheel pit of the wheel, propelled by the water of the plaintiffs' pond, by which their machinery is driven, thereby impeding such wheel and injuring its power and efficiency, and that they have been occasioned damage thereby; that such flooding existed when the action was commenced, and had existed for some time before.

The complaint prays that the plaintiffs recover for the damages already sustained by them, and prays that the defendants be perpetually enjoined and restrained against the continuance of such unlawful flooding of plaintiffs' said mill.

The answer makes an issue as to all the material facts necessary to constitute plaintiffs' cause of action.

The cause came on for trial at the Montgomery Circuit Court, held in September, 1890, before the court, with a jury.

No issues had been framed and stated for trial by a jury, as provided by section 970 of the Code of Civil Procedure, and when the

cause came on to be tried, the defendants' counsel insisted that under section 968 of said Code, the defendants were entitled to have the action tried by a jury; plaintiffs' counsel insisted that the case was an equity case to be tried by the court, without a jury, or by the court with a jury, to which jury, the court might, in its discretion, submit questions of fact arising upon the issues to be tried by the jury, as provided by section 971 of said Code.

After the evidence had been taken, and certain questions had been submitted to the jury for trial, under said last-mentioned section, and the jury had been charged by the court, the counsel for the defendants requested the court to instruct the jury that they might render a general verdict if they found for the defendants in this case, and if the jury so found, the questions submitted to them need not be answered.

The court refused to so instruct the jury, and the defendants excepted.

This brings up the preliminary question as to whether there has been a mistrial of the action.

Section 968, subdivision 2 of the Code, provides that unless a jury trial is waived, an issue of fact in an action for a nuisance must be tried by a jury. And different authorities have held that in an action to recover damages occasioned by a nuisance, and to abate the nuisance, and to restrain and enjoin against its continuance, that a jury trial is a matter of right. The following are some of the cases to that effect: *Hudson* v. *Caryl* (44 N. Y. 553); *Colman* v. *Dixon* (50 id. 572); *Dorr* v. *Dansville G. L. Co.* (18 Hun, 274); *Libmann* v. *M. E. Ry. Co.* (13 N. Y. Supp. 378); *Cornell* v. *N. Y. E. Ry. Co.* (Id. 511).

If no objection is taken at the trial by either party, the right is waived. (*Barlow* v. *Scott*, 24 N. Y. 40).

And by bringing such an action, the plaintiff waives the right to trial by jury, and the case may be tried by the court against his objection, with the aid of a jury, as the court in its discretion may determine, according to the practice in equity cases. (*Davison* v. *Associates of the Jersey Co.*, 71 N. Y. 333; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 id. 30–46; *Ward* v. *Plato*, 23 Hun, 402; *Baird* v. *Mayor*, 74 N. Y. 382; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 105 id. 319–321.)

And in such cases, it has been held that it is the proper practice to submit the issues at law to a jury, and then to dispose of the remaining issues without the intervention of a jury. (*Davis* v. *Morris*, 36 N. Y. 572; *Brady* v. *Cochran*, 23 Hun, 274; *Cornell* v. *N. Y. E. Ry. Co.*, 13 N. Y. Supp. 511; *Hooker* v. *City of Rochester*, 35 N. Y. St. Repr. 408; S. C., affirmed on appeal, 36 id. 458; *People* v. *M. T. & T. Co.*, 11 Abb. N. C. 304.)

And that for irregularity in such procedure in not making proper findings appropriate for the equity relief, the remedy is by motion to correct the proceedings, and not by appeal from a judgment. (*Hammond* v. *Morgan*, 101 N. Y. 179; *Acker* v. *Leland*, 109 id. 5.)

In *Parker* v. *Laney* (1 T. & C. 590), this court, at General Term, reversed the judgment based on a general judgment for damages where the court, upon the same evidence, had made findings to support, and had granted an injunction.

In the same case on appeal (58 N. Y. 469), the Court of Appeals reversed the General Term on the ground that the finding of a general verdict for damages established the commission of the acts charged, and that such acts occasioned the injury complained of, and authorized a judgment restraining such acts.

The Supreme Court maintained that there was no right of trial by jury in the case; the Court of Appeals did not refer to or determine the point. But the Court of Appeals decided this question in the case of *Cogswell* v. *N. Y., N. H. & H. R. R. Co.* (105 N. Y. 319–321). In that case the complaint demanded both legal and equitable relief; it prayed judgment for damages for an abatement of the nuisance complained of, and also for an injunction enjoining defendant against continuing the nuisance, and from permitting its lands to be used for the purpose of carrying on any operation thereon, which would injure the plaintiff in the enjoyment of her property.

The plaintiff had moved, in the Special Term, for an order settling issues to be tried by a jury, and the court had denied the motion, and stated in the order, on the ground that " a trial by jury is a matter of right in this action."

The court held that the plaintiff, by bringing an action for both legal and equitable relief, waived the right to trial by jury, and submits to have the issues tried by the court, or by the court with the

aid of a jury, as the court, in its discretion, may determine, according to the practice in equity cases.

But in that case it was the defendant who objected to having the issues tried by the court, and insisted that he had a right to have them tried by a jury; and the determination was that the defendant, in such an action, so brought, has no right, under the section of the Code referred to, and the Constitution of the State, to have the issues in such a case tried by a jury.

At page 321, the court says: "This is not a case, which as a whole, and in both aspects, was triable by a jury at the adoption of the Constitution, nor is it one where, under the present system, the plaintiff is compelled to unite her claims for both equitable and legal relief in the same action. * * * This is not, we think, an action for a nuisance within section 968 of the Code of Civil Procedure. The action of nuisance is mentioned in the section, together with other common-law actions, all of which must, the section declares, be tried by a jury, unless a jury is waived or a reference is directed. Reading the section in connection with section 1660, it is clear, we think, that an equitable action to restrain the continuance of a nuisance is not an action for nuisance within section 968."

This determines that this action is an equity action, governed as to the trial of the issues therein by the law applicable to equity cases; and that the defendant had no absolute right to the trial of such issues by a jury.

This being an equity case, the court has power to reverse, disregard or modify the findings of the jury. ( *Vermilyea* v. *Palmer*, 52 N. Y. 471–474; *Learned* v. *Tillottson*, 97 id. 1; *Hammond* v. *Morgan*, 101 id. 179; *Acker* v. *Leland*, 109 id. 5.)

On the trial questions were submitted to the jury and answered as follows:

*First.* Did the dam built on defendant's premises in 1871 raise the water above such dam to a higher level than the dam on said premises next before said dam of 1871 was constructed? If higher, how much higher? Answer. Yes, two feet.

*Second.* Did said dam of 1871 raise the water on plaintiffs' land? If so, to what depth did it raise the water at the line between the lands of the plaintiffs and defendants? Answer. No.

*Third.* Did the dam built on the defendants' premises in 1881 raise the water above such dam to a higher level than the dam built on said premises in 1871 ? If higher, how much higher ? Answer. Yes, one foot.

*Fourth.* Did said dam of 1881 raise the water on plaintiffs' land ? If so, to what depth did it raise the water at the line between the lands of the plaintiffs and defendants? Answer. Yes, one foot.

*Fifth.* Did the dam built on defendant's premises in 1887 raise the water above such dam to a higher level than the dam built on said premises in 1881 ? If higher, how much higher ? Answer. No.

*Sixth.* Did said dam of 1887 raise the water on plaintiffs' land ? If so, to what depth did it raise the water at the line between plaintiffs' and defendants' land ? Answer. No.

*Seventh.* Does the dam of the defendants, as maintained by them at the time of the commencement of this action, September 10, 1889, and since that time, cause the water to flow back above the boundary line between the plaintiffs' and defendants' land ? If so, what is the depth of the water at said line, which it so causes to flow back ? A. Yes, one foot.

*Eighth.* Did plaintiffs sustain damage by loss of the efficiency of their mill between February 21, 1889, and September 10, 1889, by reason of the water being raised by defendants' dam upon the water wheel in the plaintiffs' mill to a higher level than the water was raised at the site of said wheel before the building of said dam of 1871 ? If plaintiffs sustained damage from such cause, what is the amount of such damage during such period ? Answer. Damage, $161.

What is the amount of such damage for the period from September 10, 1889, to September 27, 1890 ? We estimate damage $300.

Plaintiffs asked that such findings may be confirmed and adopted by the court as its findings, except the fifth, which finds that the dam of 1887 did not raise the water to a higher level than the dam of 1881 ; and the sixth finding, that the dam of 1887 does not raise the water on plaintiffs' land ; and plaintiffs insist that the seventh finding, that the dam maintained at the time of the commencement of the action raises the water one foot on the boundary line, should be modified by a finding that such dam at that point raises the water two feet. Defendants insist that the second, fifth and sixth findings are correct, and all the others should be set aside.

It is evident that the sixth finding should have been answered by the jury, "yes, one foot," to have been consistent with the other findings.

In the view that I have taken, it will not be necessary to examine the charge to the jury upon the questions submitted to it.

Upon examining the evidence on the question as to whether the level of the water has been raised by the dam built on the defendants' lands, I see nothing inconsistent with the idea that the dam built in 1871 was two feet higher than the old Deal dam, and that the main structure of the dam of 1871 was built with the intention of utilizing all the water power there was on the defendants' lot. That that dam, by the use of two or three flush boards in low water, was made to set the water back on the plaintiffs' land from twelve to eighteen inches; that when the dam of 1881 was built, the main structure raised the water a foot or more higher than the main structure of the dam of 1871, and that by the use of three sticks of timber on the last-named dam from about 1884, until near the time when that dam went out in 1887, the water was raised some two feet higher than the main structure of the dam would have raised it. That the main structure of the dam of 1887 was of the same height as the main structure of the dam of 1881, and two feet lower than the latter dam was when the three eight-inch sticks of timber were on it.

I have no doubt that by these dams the water was raised at least one foot, and probably nearly two feet by the dam of 1887, which was standing at the time this action was commenced.

Washburn's Easements and Servitudes (Chap. 3, § 13), states that it seems to be well settled that a mill-owner has a right by means of his dam to swell or set back the water of the stream in its natural state, to the line of the adjoining riparian proprietor, and to maintain his dam at that height, although at times of freshet, the water of his pond shall set back upon the land of such proprietor, and GIBSON, Chief Justice, says, in *McCalmont* v. *Whitaker* (3 Rawle, 84–90), "the water power to which a riparian owner is entitled, consists in the fall in the stream when in its natural state, as it passes through his land, or along the boundary of it, or, in other words, it consists of the difference of level between the surface where the stream first touches his land, and the surface where it leaves it."

This definition is adopted in terms by the Supreme Court of Illinois, in *Plumbleigh* v. *Dawson* (1 Gilm. 544).

The counsel for both parties made no contention but that this is the correct rule governing the case at bar, and having this in mind, I have made the finding that the water was raised at the boundary line at least one foot.

I am satisfied after careful examination that the evidence given by the plaintiffs upon the trial was not sufficient to entitle them to recover any damages within the rules of law governing such cases. The true measure of damages in such a case is the difference in the rental value, free from the nuisance or subject to it. (*Francis* v. *Schoellkopf*, 53 N. Y. 152; *Colrick* v. *Swinburne*, 105 id. 503, and cases there cited; *Michel* v. *Supervisors*, 39 Hun, 47; *Van Buren* v. *Fishkill Water Works*, 50 id. 448; *Murray* v. *Archer*, 5 N. Y. Supp. 326.)

Assuming that the evidence of plaintiff given on the question of damages was competent, it was insufficient to form any reasonable, just basis of computing the damages.

The difficulty in furnishing sufficient evidence to estimate such damages shows that the plaintiffs are entitled to equitable relief, if they have a right of action against the defendant.

Early in 1886, Chas. D. Austin purchased the premises, which were, on February 22, 1889, conveyed by him to the defendants. For such premises, rights and privileges, he paid $20,000. Thereafter he enlarged the buildings, put in a new water trunk and wheel, placed expensive machinery in the mill, and began the erection of a new mill on the opposite side of the creek, to be furnished with water power from the dam of 1887, which he built with a bulkhead on each side. Plaintiffs were in possession of their property when the dam of 1881 was built. At that time, the plaintiff Dean was informed by the Hewitts, who built that dam, that it was being wrongfully raised; this dam was allowed to be completed, and to remain for six years without objection. In the meantime, Austin, a *bona fide* purchaser for value, came into possession of the defendants' premises under his deed, which granted the right to retain the water of the creek upon the lands conveyed, "or any other lands, as the same is used, owned or enjoyed by the said first party." He enjoyed this right undisputed and unquestioned for a

year or more before the dam of 1881 was carried away. Then he began building a new dam of the same height of the old one, and plaintiff Dean was so informed at the time and made no objection.

Plaintiffs passed the dam of 1887 while it was being built. The plaintiff Dean inspected it; talked with the workmen about its height when they had reached the top on one side ; was told that it was being built the same height as the dam of 1881, and remarked that it was a good, substantial dam, and that he was glad they were building such a good dam.

The plaintiffs, having utilized their water power before 1881, knew to what height that dam, with the timber structure upon it, had flowed the water back upon them. This appears clearly from the evidence of the plaintiff Dean himself, who says that as early, at least, as the building of the dam of 1881, he believed that the water had been raised by the dam below upon the plaintiffs' land. If the plaintiffs were ever to contend that the water had been raised upon their land as against Austin, or the defendants, who derived their title from him, they should have made claim upon the first opportunity, and at least before Austin was allowed to expend money in the building of the dam of 1887, or the structures to be supplied with water power from such dam.

In equity, when a man has been silent, when in conscience he ought to have spoken, he will be debarred from speaking when conscience requires him to be silent. (*Niven* v. *Belknap*, 2 Johns. 573, 589.)

As was said in that case, " there is a negative fraud in imposing a false apprehension on another by silence, where silence is treacherously expressive."

Austin had the right to act upon the presumption that the plaintiffs would not suffer an injury to their rights by his grantors, without resistance, and that if the building of the dam of 1887 would be an encroachment upon plaintiffs' rights, that they would have knowledge of it, and make objection; that as they did not make any objection, and acquiesced in the building of the dam, and the expenditures on the structures to be used in connection with the water power that there was no encroachment.

Defendants succeed to Austin's rights. If there is an estoppel in his favor, it applies equally to them. (*Wood* v. *Seely*, 32 N. Y. 105,

116; Willard's Eq. Juris. 250, 609; *Alexander* v. *Pendleton*, 8 Cranch, 462; Bigelow on Estoppel, 341, 607, 608, and cases cited.)

The principle of estoppel by silence has been applied repeatedly in this State, and by the courts of the United States. (*Niven* v. *Belknap*, 2 Johns. 573, 589; *L'Amoureux* v. *Vandenburgh*, 7 Paige, 316; *Erie County Sav. Bank* v. *Roop*, 48 N. Y. 292, 298; *McClare* v. *Lockard*, 121 id. 308; *Leather Mfgs. Bank* v. *Morgan*, 117 U. S. 96, 106, 112.)

It is not necessary to an equitable estoppel that the party should intend willfully to mislead, but whatever may be the intent, if he makes such a representation as a sensible man would take to be true, and believe that it was meant that he should act upon it and does so act, the party making the representation is precluded from contesting the truth. (*Continental Nat. Bank* v. *N. Bank of the Commonwealth*, 50 N. Y. 575, 580, 582; *Blair* v. *Wait*, 69 id. 113, 116.)

The case at bar comes within the principle that if one man knowingly permits another to purchase and expend money on land upon an erroneous opinion of title, without making known his claim, he will thereafter be estopped from asserting it. (*Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 354; *Town* v. *Needham*, 3 Paige, 545; *Storrs* v. *Barker*, 6 Johns. Ch. 166; *Brown* v. *Bowen*, 30 N. Y. 519, 541.)

The dam of 1887 was built upon defendants' land, but of such height that it would raise water upon plaintiffs' land to their injury, and, as they must have well known, they suffered it to be constructed without putting Austin in equal knowledge of the fact when he was incurring large expense in creating the water power and building the structures connected therewith. Such acquiescence was consistent only with relinquishing any claim that the dam was too high. The silence of plaintiffs under these circumstances when it was their duty to speak, if their rights were being invaded, is equivalent to a representation to Austin that they had no interests which were being adversely affected by his conduct, and estops them from taking any position inconsistent with such silence and apparent acquiescence. (Bigelow on Estoppel [5th ed.], 583, 584.)

The pond which produces the power is the material thing, without

which the dam and mills and machinery are worthless ; if the plaintiffs are now allowed to assert title against the right upon which the defendants' grantor relied when he built the dam of 1887, the damage will be as direct as if a mill instead of a pond had been placed across the line. They should, therefore, be estopped in the same manner.

A dispute as to the boundary line west of the creek had come down from the time of Maxwell and Brown. Starting from the bolt in the rock on the west bank of the creek, Maxwell claimed that the line ran through the Brown mill, cutting off the tall chimney and all that part of the mill. Brown claimed that the line bore farther south, entirely clearing his buildings. Maxwell claimed that it was the same line that ran across the creek, but the plaintiff Dean on the trial seemed unwilling to admit this. He testified, however, that Mr. Vischer surveyed their premises at one time, " and found all the lines but this line in dispute."

The plaintiff Lyon had a conversation with Austin about this controversy, in which Austin said he would sell the plaintiff sixty feet along the road, they to give him a quit claim deed of the portion between said sixty feet and the highway leading to the bridge, and that should settle the transaction forever between them. After consultation with the other plaintiffs, this agreement was closed, and in March, 1888, about a year before the commencement of this action, deeds were passed accordingly, Austin receiving $500 for the land conveyed by him to the plaintiffs.

The disputed territory extended from the bolt in the rock near the plaintiffs' tail race down to the highway fronting plaintiffs' premises. A division line was run about midway across this tract ; the upper portion was conveyed to plaintiffs and the lower portion to Austin ; the former was bounded on the south by the northerly boundary of the Chuctanunda creek, and the deed given recited that there was to be no claim for damage by reason of the premises being overflowed by water from said creek in times of freshet. This plainly excluded the idea of back water at any other time.

The other deed bounded the lands by the lands conveyed to plaintiffs by Austin, " southerly by said Austin's mill pond or dam and the Chuctanunda creek, and westerly by the highway leading across the stone bridge, and past the knitting mill of said Charles D. Austin."

This was an express recognition of Austin's mill pond or dam as they then existed and as used in connection with his knitting mill. The latter deed expressly referred to the former, and they formed part of the same transaction. They must, therefore, be read together, and both must be construed with reference to the mill pond, dam and creek, as the water was then maintained therein. This transaction shows that Austin, down to this time, must have acted in building his dam and making his expenditures in connection therewith, upon the faith engendered by the silence and acquiescence of the plaintiffs. With a claim to the land on which the plaintiffs' mill was located of such apparent validity that the plaintiffs were willing to pay him $500 to relinquish it, he would not have been likely to have given this deed if he had had knowledge that the plaintiffs made any claim that the dam was too high without having such claim adjusted and settled in the same arrangement which determined the boundary controversy. The premises must be taken as they were at the time of the conveyance. (*Lampman* v. *Milks*, 21 N. Y. 505–509; *Hamel* v. *Griffith*, 49 How. 305.)

By these circumstances the plaintiffs are estopped from asserting that the dam of 1887 is higher than it could have been lawfully built, or that it flows the water back onto the lands of the plaintiffs to the prejudice of the defendants, who succeed to the rights of Austin, to a greater extent than might be lawfully done.

Plaintiffs' complaint should be dismissed upon the merits, and costs should be awarded against them in favor of said defendants.

Judgment is ordered accordingly.