JOHN HARPER

*v.*

ELLEN HARPER.

A husband who had resided a long time in New Jersey went to Dakota and there procured a divorce. When he desired to convey some of his lands in this State, he discovered that there was some doubt as to his ability to give a

In *Taylor* v. *Reese, 44 Miss. 89,* a note was sold and delivered to complainant's testator, without endorsement, by the payee, who afterwards died intestate, and an administrator was appointed.—*Held,* that complainant had a right to resort to equity, as well as to law, on his title to the note as an equitable assignee.

In *Grover* v. *Grover, 24 Pick. 261,* a promissory note, payable to the order of the donor, was given by him to A, without endorsement.—*Held,* that A could sue the maker of the note at law in the name of the donor's administrator, and that even against his consent; see, also, *Austin* v. *Mead, L. R. (15 Ch. Div.) 651; Clement* v. *Cheesman, L. R. (27 Ch. Div.) 631; Bates* v. *Kempton, 7 Gray 382; Druke* v. *Heiken, 61 Cal. 347; Bradley* v. *Hunt, 5 Gill & Johns. 54.*

As to the necessary averments in pleading, see *Cunliffe* v. *Whitehead, 3 Bing. N. C. 828; Clay* v. *Crowe, 8 Exch. 295; Price* v. *Price, 16 M. & W. 232; Prevot* v. *Abbott, 5 Taunt. 786; Russell* v. *McDonald, 1 U. C. Q. B. 296; West* v. *Bown, 3 U. C. Q. B. 290; Wanzer* v. *Stoutenburgh, 13 U. C. Q. B. 184; Chaudron* v. *Hunt, 3 Stew. (Ala.) 31; Farris* v. *Wells, 68 Ga. 604; Richardson* v. *Snider, 72 Ind. 425; Rogers* v. *Miller, 5 Ill. 333; Crisman* v. *Swisher, 4 Dutch. 149; Billings* v. *Jane, 11 Barb. 620;* and proofs, *Twogood, ex parte, 19 Ves. 229, 231; Culdwell* v. *Meshew, 44 Ark. 564; Turnley* v. *Black, 44 Ala. 159; Sloo* v. *Roberts, 7 Ind. 128; Paulman* v. *Claycomb, 75 Ind. 64; Stroud* v. *Howell, Pen. (N. J.) 648; Theobald* v. *Hare, 8 B. Mon. 42; Redmond* v. *Stansbury, 24 Mich. 445; Jackson* v. *Love, 82 N. C. 405; Robertson* v. *Dunn, 87 N. C. 191.*

Whether the holder must make the payee a party as well as the maker,

Harper *v.* Harper.

perfect title unless his former wife, Ellen, should join in the deed. This led to an agreement that he should pay her $1,750 a year for the support and maintenance of herself and five of their children, and that she should join in the execution of any deeds or mortgages, in case he desired to sell or mortgage either of three certain lots. He presented certain deeds and requested her to join in the execution of them, but she refused to do so until she could consult her counsel.—*Held*, that this is not such an absolute refusal as to bring the case within the clause in the agreement that she shall forfeit all right to the provisions made for her under said agreement.

On bill for relief.

*Mr. Garret Berry*, for the complainant.

*Mr. Gilbert Collins*, for the defendant.

Bird, V. C.

This suit was instituted for the purpose of having declared void the agreement entered into by and between the complainant, of the first part, and the defendant, of the second part, and Gil-

*Heartman* v. *Franks*, 36 Ark. 501; *St. John* v. *Hardwick*, 11 Ind. 251; *Barcus* v. *Evans*, 14 Ind. 381; *Clough* v. *Thomas*, 53 Ind. 24; *Gill* v. *Johnson*, 1 Metc. (Ky.) 649; *Jones* v. *Witter*, 13 Mass. 304; *Boeka* v. *Nuella*, 28 Mo. 180; and what defences may be interposed, 2 Rand. Com. Pap. ? 788; *Carhart* v. *Reviere*, 78 Ga. 173; *Foreman* v. *Beckwith*, 73 Ind. 515; *Pearson* v. *Cummings*, 28 Iowa 344; *Thompson* v. *McCullough*, 31 Mo. 224; *Lackay* v. *Curtis*, 6 Ired. Eq. 199; *Depau* ads. *Brown*, Harp. 251; *Smith* v. *Lurry*, 3 Tenn. 325; *Ingram* v. *Morgan*, 4 Humph. 66; *Lyons* v. *Miller*, 6 Gratt. 427; *Weber* v. *Orten,* 91 Mo. 677; *Kyle* v. *Thompson*, 11 Ohio St. 616.

By statute, in several states, an action at law lies by the holder of a note without endorsement, who is a purchaser for value, 2 Rand. Com. Pap. ? 791; also, *Heartman* v. *Franks*, 36 Ark. 501; *Oldham* v. *Ledbetter*, 1 How. (Miss.) 43; *Harvey* v. *Brooks*, 36 Mo. 493; *Van Riper* v. *Baldwin*, 19 Hun 344; see *Hillborn* v. *Artus*, 4 Ill. 344; *Robinson* v. *Wilkinson*, 38 Mich. 299; *Minor* v. *Bewick*, 55 Mich. 491; *Waters* v. *Millar*, 1 Dall. 369.

An action at law lies on a lost negotiable note, which had not been endorsed or negotiated at the time of such loss, *Pierson* v. *Hutchinson*, 2 Campb. 214, n.; *Rolt* v. *Watson*, 12 Moore 510, 4 Bing. 273; *Branch Bank* v. *Tillman*, 12 Ala. 214; *Depew* v. *Wheelan*, 6 Blackf. 485; *Dean* v. *Speakman*, 7 Blackf. 317; *Moore* v. *Fall*, 42 Me. 450; *Pintard* v. *Tuckington*, 10 Johns. 104; *Adams* v. *Baker* (R. I.), 11 Atl. Rep. 168; *Hough* v. *Barton*, 20 Vt. 455; *Clark* v. *Snow*, 60 Vt. 205; see *Ramuz* v. *Crowe*, 1 Exch. 166; *Crowe* v. *Clay*, 9 Exch. 604; *Vanauken* v. *Hornbeck*, 2 Gr. 178; *Thayer* v. *King*, 15 Ohio 242.—Rep.

bert Collins, as the trustee of Ellen, of the third part. By the terms of the agreement, John agreed to pay to Ellen $1,750 per year, for her life, for the support of herself and of the children of the said John and Ellen, and said Ellen agreed to accept the same in full satisfaction of her claim for said support, and to suitably maintain and educate said children. To secure the payment of said moneys, Ellen was to take the management of the real estate of John in Jersey City, consisting of several houses, all identified, and to let the property and to collect the rents, attend to repairs and payments of water-rents, taxes or assessments; to account monthly, and to pay whatever bills remained after deducting the amount due to her, charging herself $23.50 per month for the premises occupied by her so long as she continued in possession thereof. The payments to Ellen were secured by pledge of two of the houses and lots above mentioned in and by said agreement.

They thereby also agreed in the future of their lives to live separate and apart, and not, in any manner, to trouble each other. And Ellen also agreed, in case John desired to sell or to mortgage three of said properties, or any part of them, that she would execute a proper deed barring her claim of inchoate dower in such property so sold; "and in case she shall violate this provision and shall refuse to execute such deed, she shall forfeit her right to the provision made by her in this agreement."

John declares, by his bill, that Ellen has so far refused to join with him in the execution of conveyances as to bring herself within the clause of the agreement above quoted, and insists that, having done so, it is the duty of a court of equity to enforce the forfeiture. The allegation is, that upon two occasions he had entered into an agreement for the sale of two of the properties which were provided for in said agreement, and, in order to carry out the agreement on his part, prepared deeds of conveyance of said parcels so agreed to be sold, and exhibited them to Ellen with the request that she would join in the execution of them, and that she refused so to do. It is also alleged that she refused, under similar circumstances, to join with him in the execution of a mortgage. It is insisted that this conduct on

her part makes the clause operative in a court of equity, and deprives her of all claim to the annuity, or any part thereof.

The answer of the defendant practically denies the refusal, in the sense contemplated by the bill, as being absolute, and insists that, so far as the refusal was made, it was because the sales were only pretended and not *bona fide* sales, and that Ellen, being aged and very infirm and unacquainted with business, desired to consult with her counsel before signing any such paper or papers, and also insists that she made known that desire at the time of the refusal, and that it was urged by her before and at the time; that it was expected that her counsel should be consulted respecting it; and that it never was her intention to absolutely refuse, under all circumstances, to join in the execution of conveyances of said property to *bona fide* purchasers. It is likewise insisted that both of said alleged sales and said mortgage were not honest, *bona fide* transactions, but were conceived with the view simply of discharging the said real estate from any lien or claim of said Ellen, whatever it might be.

It is also alleged that this question of forfeiture, which is the only object of this suit, is *res judicata*.

It is also alleged that while the court frequently declares against a forfeiture, it never lends its aid to enforce one.

I am not prepared to say that the insistment that this question is *res judicata* can be sustained. Were I without doubt on this head, it would be my duty, considering the public welfare, so to declare. There is no wiser provision of the law than that one full and fair hearing shall suffice. But in this case, I find from the very carefully prepared opinion of the learned advisory master who heard the cause, that, in his judgment, while there was some effort at raising the issue now presented, the allegations of the cross-bill were wholly insufficient for any such purpose, and with this brief statement the consideration of it was dismissed. But more than this, there are some facts now presented which were not then before the court, and although they be of the same nature, they are not all the same transactions. At all events, I am not content to rest the decision of a question so momentous to all parties on this ground.

Harper *v.* Harper.

Nor am I willing to let the case rest on the question of forfeiture. It very forcibly impresses me that no court will resort to this arm of the law, for or against either party, until it becomes absolutely necessary so to do. It was urged that courts of equity never enforce penalties. Clearly the courts have expressed themselves very strongly indeed in this direction. "However equity may afford relief against a clause *nomine poenae* it has never yet assisted in taking advantage of a penalty." *Doneraile* v. *Chartres, 1 Ridg. P. C. 122, 134; Hele* v. *Hele, 2 Ch. Cas. 87; Smith* v. *Allen, Sax. 43 (21 Am. Dec. 33*); *Hall* v. *Delaplaine, 5 Wis. 206 (68 Am. Dec. 57*); *Helme* v. *Philadelphia Life Ins. Co., 61 Pa. St. 107 (100 Am. Dec. 621*). Nor can I say what a court of equity might not be called upon to do in order to enforce a fair agreement between parties, understandingly made. Therefore, whatever may be the possibilities of this or any other case on the subject of forfeiture, I cannot see that this case has reached any such extremity as to make it the plain duty of this court to solemnly decide whether or not such penalty as we have here should be enforced. And that, I think, will appear as we look into the case more fully.

1. It will be noticed that the argument is one between parties who had been husband and wife, if they were not so still at the making of the agreement. If they were not standing in that relation to each other, they were still under the most solemn obligation known to the law to each other and to the children, the offspring of their marriage.

It is true the husband had made a formal, if not a legal and successful, attempt to separate himself from his wife, but happily there is no law which recognizes the right of a father to divorce himself from his children during their minority.

It is admitted that this agreement was entered into not only to enable John to make title to his lands, but also to provide Ellen with the means by which to maintain and educate their infant children. In such case the heart of a judge need not be very keenly alive to the wants or necessities of a party to pause a long while before he would take away the supply thus provided. It may be admitted that John made out a strong case, as between

one business-man and another, in an ordinary deal, but not so where the agreement rests, as in this case, upon the most sacred and binding family ties and highest moral obligations.

2. Mrs. Harper is now aged and very much enfeebled both in body and mind, even beyond her years. She is in that mental and physical condition which renders her an object of pity whenever she attempts to give a narration of any of the transactions most near and dear to her. I am quite certain when what has been said above is considered, and when it is further considered that the husband attempted to sever the holy bond after the eleven children had been born and nurtured by them, five of whom had been carried to the grave, and when it is further considered that he sought to effect that separation, not within the jurisdiction where all of these domestic ties had been formed, and where the daily walk of each had for a half century been open to the inspection of all, but in the far-away Territory of Dakota—all will coincide with me in saying that before the court cuts off this annuity, it must be made to appear that the mother's conduct has been perverse and obstinate in the very extreme. I call attention to the fact that I do not make the observation by way of criticising John's conduct, but simply to show an element in the case which cannot be kept out, and which is there by his own seeking, and not by Ellen's. If, in his passion or extremity, in seeking to abandon one burden or responsibility he so managed as to really take on two, he cannot charge it to the misjudgment of the court. One of these burdens was an annuity for the support of Ellen as well as his children by her, and I can find nothing whatever to justify me in cutting off the supply that affords her bodily nourishment in her declining years.

3. But while the facts to be gathered from the testimony show that Ellen would not sign the deed nor the mortgage at the time they were presented to her for her signature, the refusal was not such as to afford any excuse for a court of conscience to declare that she thereby had forfeited her living. There is a strong denial of any such refusal. And on this point I am very clear that the complainant has not shown such determination in the refusal as obliges the court to pronounce whether in such case

equity will enforce a forfeiture. While the evidence on behalf of John is to the effect that her refusal was without limitation as to time or qualification as to other circumstances, on the part of Ellen it shows that she wanted to consult her counsel.

4. It seems to me that John did not deal with Ellen quite fairly. He knew the weakness of her mind. He also knew that she was very sensitive on all subjects which bore any relation to their previous marital rights. He likewise knew the fact that Mr. Collins was her trustee, and that Messrs. Collins & Corbin were her counsel and advisers in all matters pertaining to this business. But besides this, John had been distinctly informed by Mr. Corbin that if, at any time, he desired Ellen to execute any deeds, if he would bring them to Collins & Corbin, they would examine them, and if they were all right and proper for her to sign, they would see that she executed them. Therefore it is that I repeat, with all of this information and this plain notification from Collins & Corbin, it cannot be said that he treated Ellen, in her ignorance and infirmity, fairly.

Therefore, it seems to me that in no sense has there been a forfeiture, and, hence, the court is not required to say whether, in any case, it will undertake to enforce a forfeiture or not. I will advise that the bill be dismissed, with costs.