LUTHER A. HALL and ABEL RAWSON, Appellants, Complainants,

*vs.*

GEORGE P. DELAPLAINE, ELISHA BURDICK and NELSON DEWEY, Appellees Defendants.

APPEAL FROM THE CIRCUIT COURT OF DANE COUNTY.

A party who obtains the title to real estate in good faith, for a valuable consideration, and without notice, actual or constructive, of the claims of others, will be protected.

*Semble*, that a bill in equity, filed, but without the issue or service of process, or publication under the statue, is not *lis pendens*, or constructive notice to purchasers.

Where the parties to a contract for the sale of real estate have not made time the essence of the contract, courts will hold the bargainor to a specific performance, although the purchase money was not paid or tendered at the exact time fixed in the contract, provided compensation can be made for the delay, and it appears to be conscientious that the conveyance should be made.

Where, however, time is the essence of the contract, the rule is different; and, in such case, unless the money is paid at the time stipulated, the obligation of the bargainor to convey is at an end.

Where the vendors of land reserve the option to declare the contract void for default of payment at the time stipulated, they must, to avail themselves of the reservation, declare their " option " *at the time of the default*.

Courts of equity do not enforce forfeitures, and always mitigate and relieve against them, when it can be done without violence to the contract of the parties.

Where the vendor of land reserves the right to declare a forfeiture for default of payment, and does declare such forfeiture, the vendee may prevent the forfeiture by *immediately* tendering the amount due.

The vendors of land, mailed a declaration of forfeiture for non-payment of purchase money, at Madison, Wisconsin, to the vendees, at Tiffin, Ohio, on the 19th of March; Held, that a tender of the purchase money on the 30th of the same month was in time to save the forfeiture.

*Quere*, whether it was not the duty of the vendors to seek the vendees, and to return, or offer to return, such part of the purchase money as they had already received? And *quere*, also, as to the force of simply inclosing such a notice by mail, without proof of its reception by the vendees?

Where the vendors of land have put it out of their power to comply with their contract by conveying the premises to a third party without notice, a court of equity will retain the case for the purpose of ascertaining the damages the complainants should receive from the vendors, to save a multiplicity of suits; and, *a fortiori*,

since by the establishing the Code of Procedure in Wisconsin, the distinction between courts of law and equity is abolished.

Where the vendors, in a real contract, agree to convey the premises by deed, with covenants of general warranty; and it is found that they are unable to comply with the contract, by reason of the failure of the title, without their fault, the measure of damages is the amount of the purchase money and interest.

*Quere*, where the vendors, by their own act, put it out of their power to comply, by conveying to a third party without notice?

But where the contract is for a deed, with covenants of general warranty, "and covenants to indemnify" the vendees "in case of failure of title, for increase of value of the real estate," the rule of damages against the vendors who have put it out of their power to convey, would be the difference in the value of the land at the time the conveyance should have been made, and the sum agreed to be paid for the land, if that value be greater than the price fixed in the, contract.

THIS was a bill brought for the specific performance of a contract for the sale of real estate, by the vendees against the vendors. The material facts appearing from the bill, answers, exhibits and testimony, may be briefly stated, in the order of their occurrence, as follows :

On the 13th day of May, 1853, the defendants Delaplaine and Burdick, of Madison, Wisconsin, entered into a contract in writing with Samuel Waggoner and the complainant Hall, of Seneca county, Ohio, for the sale of two parcels of land in the city of Madison, for the sum of $2,300. The purchase money was secured by two promissory notes of the said Waggoner and Hall, payable to the order of Delaplaine and Burdick, for the sum of $1,150 each, with interest at the rate of ten per cent.; one at thirty days after date, and the other at four months after date, at the State Bank at Madison.

It appeared that the ground was under leases to different individuals, whose rights were reserved; and the contract provided that upon payment of the notes, the vendors should assign to the vendees the leases, and the rents and profits accruing after the date of the contract.

The contract also contained the following clauses, which become material, from the positions taken by counsel, and the views of the court in passing their judgment, viz :

" Therefore, they, the said Delaplaine and Burdick, covenant to and with the said Hall and Waggoner, their heirs and assigns,

that upon the punctual payment of said notes, they will convey the said bargained premises unto the said Hall and Waggoner, their heirs and assigns, with covenants of general warranty, and covenants to indemnify them in case of failure of title, for increase of value of the said real estate, as well as all improvements which may thereafter be made thereon.

" And it is further agreed, that in case the said Hall and Waggoner fail to pay both of said notes, that then and in that case, the said Burdick and Delaplaine shall have the option of declaring this contract void, and returning the said notes to be canceled."

The first note appears to have been left at the State Bank for collection, and to have been paid, in whole or in part (it is not altogether clear which), and to have been surrendered to, and taken up by, said Hall, on the 20th day of June, 1853, a period of four days after maturity.

The second note not having been paid, up to the 23d day of February, 1854, Delaplaine and Burdick then filed in the Circuit Court of Dane county, a bill in chancery, to rescind the contract of sale, on account of the default of the vendees in making the payments. No service appears to have been made of the supboena in the case on this bill, or proof of publication, under the statute; but the bill remained on file, and on the 24th day of March, 1854, Delaplaine and Burdick, of their own act, and without leave of court, entered a dismissal of the suit.

On the 9th of March, 1854, Waggoner assigned his interest in the contract to Abel Rawson, of Seneca county, Ohio, who is a co-complainant with Hall in this action.

On the 19th day of March, 1854, Delaplaine and Burdick mailed to Waggoner and Hall, in Ohio, a written notice (dated March 14), informing them, that in consequence of their failure to pay the money agreed to be paid for the purchase of the land, they, the said Delaplaine and Burdick, declared the agreement forfeited and void ; and that they held themselves in readiness to refund to them, said Hall and Waggoner, at such time and in such manner as they should direct, the money heretofore received by them on the agreement, together with legal interest

thereon; and also to return the remaining unpaid promissory note.

On the next day, the 20th of March, 1854, Delaplaine and Burdick sold and conveyed by deed of general warranty, with full covenants, the same premises, so contracted to Hall and Waggoner, to Nelson Dewey of. Wisconsin, one of the defendants, which deed was recorded on the 23d of March.

On the 30th day of March, 1854, Luther A. Hall, one of the vendees of the land, came to Madison, and at the State Bank, tendered to the defendant Delaplaine, in specie, the amount of principal and interest due on said last note, and at the same time Delaplaine tendered to Hall the amount of the first note and the interest thereon, and offered to return to him the unpaid note.

On the first day of April, 1854, the complainant Hall filed an answer to the bill of. Delaplaine and Burdick (assuming that the same had not been dismissed), and subsequently the complainants, Hall and Rawson, filed the present "cross bill in the nature of an original bill," setting forth the contract with Delaplaine and Burdick, for the purchase of the land, the payment of the first note, the transfer of Waggoner's interest in the contract to Rawson, the tender of the amount of the last note to Delaplaine, and his refusal to receive the same and perform the contract by conveying the premises; that Delaplaine and Burdick since the making of the contract, have received rent from the lessees in possession, in the sums of 156 dollars, and 39 dollars, and also about 30 dollars, of right belonging to the vendees of the land.

They also charge that since the making of the contract, the value of the land has advanced greatly; and this they allege is the true reason of the refusal of Delaplaine and Burdick to comply with their contract.

They charge that the deed to defendant Dewey was a secret deed of trust for said Delaplaine and Burdick, made without any actual consideration; that Dewey had full knowledge of the rights of the complainants when he took said conveyance; that at the time of the execution of said deed to Dewey, the action on the original bill of Delaplaine and Burdick was pending;

that the possession of the lessees of the premises, was for the benefit of the complainants, and was adverse to Delaplaine and Burdick, and was a notice to Dewey at the time of his taking the deed, and into the nature of which possession he was bound to inquire.

· They pray a specific performance of their contract on the part of Delaplaine and Burdick, and a conveyance to them by Dewey, &c.

Nelson Dewey answers, and denies positively that he had, in fact, any knowledge of the filing of said original bill, or of the contract between Delaplaine and Burdick, and Hall and Waggoner, until the lapse of eight or nine days after he received the deed for the premises. He insists that he had no constructive notice of the filing of the bill, for the reason that no subpœna had been served in the suit, and the same was not therefore *lis pendens.* He admits he had knowledge of the possession of the lessees at the time of the purchase, but that they were in possession under leases from Delaplaine and Burdick. He denies that at the time he purchased and paid his money for, and took a deed of the premises, he had any notice, information or knowledge that complainants had, or claimed to have any right, title, property, claim, interest or demand, in or to the premises, or any part thereof, or that Hall and Waggoner, or either of them, had ever contracted or agreed to purchase the same.

He denies all fraud, or intention to defraud in the transaction; alleges that the true and actual consideration he paid for the premises, was the sum of four thousand five hundred dollars; denies any secret trust for Delaplaine and Burdick in the premises, or that there was any agreement or understanding that the premises, or any part thereof, should at any time be reconveyed to Delaplaine and Burdick.

Delaplaine and Burdick also answer.

Upon these pleadings, the exhibits and testimony, the court below denied the prayer of the complainants and dismissed the bill.

*H. S. Orton,* for complainants.

*J. H. Knowlton*, for the defendant Dewey, cited the following authorities.  9 *Paige*, 512; 1 *Vern. R.* 318; 6 *Barbour's S. C. R.* 179; 7 *J. R.* 464; 2 *Barb. Ch. R.* 151; 11 *Wend.* 442; 13 *John. R.* 54; 4 *Milne & Craig*, 194; 8 *Paige*, 81; 9 *Cranch*, 458.

*Abbott, Clark & Coit*, for defendants.

It is a settled principle that a party asking the specific performance of a contract, must either show himself without default, or exhibit an excuse which will justify any default he may have made.  *Campbell & Davis vs. Hamson*, 3 *Bibb*, 292; *Sug. Vend.* 497.

In all cases where time is the essence of the contract, if the parties asking specific performance have made default, the court will refuse to decree specific performance.  *Benedict vs. Lynch*, 1 *John. Ch. R.* 370.

In the following cases time is the essence of the contract:

1st. When the parties to the agreement have specified a particular day for the performance of any condition, and provided for a forfeiture in case of non-performance.  *Wells vs. Smith*, 2 *Edwards N. Y. R.* 78.

2d. When the value of the property has changed, or has not a fixed and permanent character.  *Lead. Cas. in Eq.*, Vol. II, [*top p.*] 20, *and cases cited in note; Story's Eq.* Vol. II, p. 102, *and note; Hipwell vs. Knight*, 1 *Younge & Collyer*, 415; *Sug. Vend.* 495.

3d. When a clause is inserted in the contract declaring it void unless performed at a particular time.  *Lead. Cas. in Eq.* Vol. II, p. 19, *and cases cited; Hudson vs. Bartram*, 3 *Madd.* 440; *Benedict vs. Lynch*, 1 *John Ch. R.* 370; 2 *McLean R.* 496.

In cases where time is not the essence of the contract, when the party seeking specific performance has been guilty of gross laches; or where, in the intermediate period there has been a material change of circumstances, affecting the rights, interests or obligations of the parties, the court will not decree specific performance.  2 *Lead. Cas. in Eq.* 27; *Longworth vs. Taylor*, 1 *McLean*, 375; 14 *Peters*, 372; *Sug. Vend.* 495.

Dewey was a purchaser in good faith, for a valuable consideration, without notice.

*By the Court*, WHITON, C. J. Before proceeding to discuss the rights of the parties to the original contract for the sale of the land in dispute, we will dispose of the case so far as the defendant Dewey is concerned.

It will be seen that he claims to be a purchaser of the land in good faith, having no knowledge of the contract which Delaplaine and Burdick entered into to sell the land.

We are of opinion that this is established by the testimony. This being the case, there can be no doubt that he obtained a good title to the land, and that the complainants therefore cannot obtain a decree for the specific performance of their contract. The doctrine that a *bona fide* purchaser of land, under the circumstances which this case presents, obtains a good title, is so well established that it has not been seriously questioned by the counsel for the complainants; the fact contested being only whether Dewey had succeeded in showing that he was such a purchaser. Dewey being thus out of the case, we will proceed to examine the matters presented by the pleadings and testimony so far as they affect the other parties to the suit.

It is contended by the defendants Delaplaine and Burdick, that by the failure of the purchasers of the land to pay the stipulated price at the time agreed upon, they forfeited all their rights as purchasers, and could not obtain a decree for the specific performance of the contract, even if the title to the land had remained in the bargainors.

It appears that at the time when the contract of sale was entered into, the bargainees made two notes to the bargainors, each for the sum of $1,150, one payable in thirty days, and the other payable in four months from date. These notes were given for the sum agreed to be paid for the land, and the contract provides that upon the punctual payment of the notes, the bargainors would convey the premises to the bargainees, " with

covenants of general warranty and covenants to indemnify them in case of failure of title, for increase of value of said real estate, as well as for all improvements which may thereafter be made thereon." It appears that the first note was not paid at maturity, but that some time afterwards the money due upon it was paid at the State Bank, where it had been placed by the payees, and the note was surrendered to the makers. Burdick says, in his answer, that this was done without his knowledge or consent; but we suppose that the officers of the bank were the agents of the payees for the purpose of collecting the note, and that their acts, performed in the discharge of their duty as such agents, must be held to be the acts of the bargainors of the land and the payees of the note. If Delaplaine and Burdick did not intend to receive the money due upon the note after the time of payment had elapsed, they should have withdrawn it from the bank at which it was made payable. But by leaving it there and permitting the officers of the bank to receive the money due upon it, they must be considered as receiving it themselves.

It appears that the note which last arrived at maturity was not paid at the time it became due, but that on the 30th of March, 1854, the money due upon it was tendered to Delaplaine, one of the defendants, by the complainant Hall, at the State Bank, which money Delaplaine refused to receive. It also appears that previous to this, on the 20th day of March, 1854, the defendants Delaplaine and Burdick conveyed the land to Dewey, and on the 14th of March, 1854, the said Delaplaine and Burdick addressed a letter to the bargainees of the land, in which the said bargainees were informed that in consequence of the failure to pay the purchase money for the land, the contract of purchase was declared forfeited, and no longer binding. The letter also contained an offer to refund the money which had been paid on the contract, with interest, and also to return the note which remained in the hands of the said Delaplaine and Burdick. It is contended by the counsel for Delaplaine and Burdick, that these facts showed the complainants could have no right to insist upon a conveyance of the land, even if the title was still in the bargainors; and that, consequently, they can

have no claim for damages on account of the failure of the title in consequence of the conveyance to Dewey.

Before we consider this question, we will call attention to a clause of the contract for the sale of the land, upon which the counsel for Delaplaine and Burdick place great reliance. It is as follows: " And it is further agreed that in case the said Hall and Waggoner fail to pay both of said notes, that then, and in that case, the said Burdick and Delaplaine shall have the option of declaring this contract void, and returning said notes to be canceled."

The general doctrine which governs courts of equity in cases where a bill is filed for the specific performance of a contract to convey land, and the payments have not all been made at the time fixed upon in the contract, appears to be well settled by the authorities. And this doctrine we suppose to be, that when the parties do not appear to have made the time for the payment of the purchase money essential, courts will hold the bargainor to the contract, and compel him to convey, although the purchase money was not paid or tendered at the exact time fixed in the contract for the payment; provided that compensation can be made to him for the delay, it appearing also to be conscientious that the conveyance should be made.

When, however, the parties have made payment of the money at the time fixed in the contract, a material and essential part of the contract, the rule is quite different; and unless in such case, the money is paid at the time stipulated, the obligation of the bargainor to convey is at an end. See 2 *White & Tudor's Leading Cases in Equity*, 3. To this general doctrine there are many exceptions and qualifications; but it will not be necessary to notice them, in order to dispose of this case. We do not perceive that the parties to this agreement, made the payment of the purchase money, at the time fixed in the contract, material or essential.

The contract provides that upon the punctual payment of the notes, the bargainors will convey the land. There is nothing in the contract, nor in the circumstances of the case, to show that payment at the particular day named by the parties, was deemed

essential, and so understood. Nor do we see that any circumstances exist which will prevent a court of equity from making perfect compensation to the bargainors for the delay in the payment of the notes.

We, however, shall not rely upon this general doctrine for disposing of the case, because the parties themselves appear to have prescribed what their rights and liabilities should be in case of a failure to pay the purchase money at the time fixed in the contract. This provision is contained in the clause of the contract last above quoted. By that, the bargainors, in case the notes were not paid, had the "option" to declare the contract void, and return the notes to be canceled. The parties having made this contract, we think that it must be the measure of their rights, duties and liabilities. We do not see how the bargainors can insist that the right of the bargainees to the land is gone, in consequence of their failure to pay the purchase money at the exact day fixed in the contract, unless the bargainors availed themselves of their right to declare the contract void, and return the notes. It becomes a material question, therefore, to inquire whether this has been done. It will be seen that the money due upon the first note was received after it became due, and that the declaration of forfeiture was not made till the 14th of March, 1854.

Notice of this was given to the bargainees in a letter dated on that day, and forwarded to them in Ohio. Could this declaration, made on the 14th day of March, avail the bargainors? We are strongly inclined to believe that this "option" should have been made at the time of the failure to pay the money.

It appears to us, that it would be inequitable to allow the bargainors to wait after the time fixed for the payment of the money had elapsed, and then make their option, or not make it, as the land should increase or decrease in value.

But however this may be, we think that the bargainees had a right, upon this declaration being made, immediately to pay the money, and thus prevent the forfeiture. Courts of equity never enforce forfeitures, and always mitigate them, or relieve against them, when this can be done without doing violence to the con-

tract of the parties; and it appears to us that it is not an unreasonable construction of this clause of the contract, to hold, that the bargainees had the right to pay the money at the time the forfeiture was declared. It will be seen that the letter to the bargainees, which informed them that the bargainors intended to rely upon this clause of the contract, was written on the 14th of March, and that the money due upon the contract was tendered to Delaplaine on the 30th of the same month. It is to be observed that the bargainees resided in Ohio: without stopping to inquire whether it was not the duty of the bargainors to seek the bargainees, and return, or offer to return, the money which they had paid on the contract, and also the note which still remained due, we think that the tender of the money to Delaplaine on the 30th of March, was in time to prevent the forfeiture. It was undoubtedly made as soon as it could be, after the notice of the intention of the bargainors to declare the contract void, reached the bargainees. Delaplaine and Burdick both state in their answers, that the letter dated on the 14th of March, containing the notice, was mailed on the 19th of the same month. The tender was therefore made in eleven days after the notice was mailed at Madison. There could have been no delay on the part of the bargainees after they received the notice.

They must have left Ohio immediately and come to Wisconsin to make the tender, and this was all that could reasonably be required of them. We are therefore forced to conclude, that if it was possible for the bargainors to make a good title to the premises, it would be the duty of the court to enter a decree compelling them to convey the land according to the contract. But as this is impossible on account of the sale to Dewey, who is a *bona fide* purchaser, the question is, whether the bill should be dismissed and the bargainees be left to an action at law to recover their damages, or whether the court should retain the case for the purpose of ascertaining the compensation and damages which the complainants should receive. The authorities upon this point are very conflicting. *See Denton vs. Stewart,* 1 *Cox R.* 258; *also, Story's Equity Jur.* § 19, *and the cases there referred to.*

But we think that to save a multiplicity of suits, the better opinion is in favor of the jurisdiction of the court in which the proceedings were had to enforce the specific performance of the contract, when, as in this case, the court has been prevented from enforcing the contract specifically by the act of the defendants. But however this may be, we feel compelled to retain the case for another reason ; and that is, that there is now in this state, no court of law, distinct from a court of equity, to which the complainants can resort for the purpose of having their damages and compensation ascertained. Since the act to establish the Code of Procedure went into effect, it has become impossible to send a party from a court of equity to a court of law ; and there seems to be no reason for not retaining the case where it now is.

The decree of the Circuit Court dismissing the bill must therefore be affirmed as to the defendant Dewey, and reversed as to the other defendants. The cause must be remanded to the Circuit Court, with directions to ascertain the damages and compensation which the complainants are entitled to receive from the defendants Delaplaine and Burdick.

It has been contended by the counsel for the defendants, that the defendants can only be compelled to return the money which they have received from the complainants, and interest. We are inclined to think that this would be the measure of damages if the title of the defendants Delaplaine and Burdick, had failed without their own fault, and possibly this court would be unable to award more, even in a case like the present, where the title of the complainants has been defeated by the act of the defendants themselves, if the deed which they agreed to execute was to contain only the ordinary covenants. *Baldwin vs. Munn,* 2 *Wend. R.* 399 ; 3 *Dana R.* 415.

But upon this subject we give no opinion, because the covenants which the bargainors agreed to insert in their conveyance of the land show that the parties have themselves agreed on a different rule of damages. In the contract for the sale of the land the bargainors agreed that they would convey the premises " with covenants of general warranty, and covenants to indemnify

them, [the bargainors,] in case of failure of title, for increase of value of the said real estate, as well as for all improvements which may [might] thereafter be made thereon."

It will be seen that the bargainors could not fulfill the agreement without executing a deed with covenants to indemnify the bargainees, in case of failure of title, for the increase of the value of the land which they agreed to sell. It follows conclusively, that for the refusal of the bargainors to execute such a deed, the measure of damages will be the difference in the value of the land at the time when the bargainees became entitled to their deed by the tender of the purchase money on the 30th of March, 1854, and the sum agreed to be paid for the land in the contract, if the value of the land at the time of the tender was greater than the price fixed in the contract; to this must be added the payment made by the complainants, and interest from the time of payment. As the agreement for the sale of the land provided that the rents arising from leases of portions of the property should be paid to the bargainees, the complainants are entitled to receive whatever rents accrued between the time of executing the contract of sale and the tender of the money on the 30th of March, 1854, and which came to the hands of Delaplaine and Burdick, and also interest on the same from the time of payment.

Ordered accordingly.