COMBS, Respondent, vs. SCOTT, Trustee, imp., Appellant.

*April 14 — April 29, 1890.*

VENDOR AND PURCHASER OF LAND: EQUITY. *(1) Specific performance: Laches. (2) Retention of cause in equity to grant compensation. (3) Measure of damages. (4) Certainty in description.*

1. An action for the specific performance of a contract to convey lands not having been brought until nearly six years after the conveyance was to have been made,— during which time the grantor died, the taxes were all paid by him and his heirs, and the lands increased from twenty to fifty fold in value,— and the delay not being excused, it is *held* that it would be inequitable to enforce such performance.

2. Specific performance being denied in such action, and the statute of limitations having run upon the contract pending the suit, so as to bar an action for the breach, jurisdiction in equity is retained for

the purpose of granting compensation for such breach; but it is left optional with the defendant to accept the findings of the trial court as to the facts by which the damages are to be ascertained, or to have a new trial to determine such facts.

3. For the breach of a contract to convey lands, the consideration for which, being the settlement of actions and matters of difference between the parties, cannot be ascertained in money or values, the measure of damages is the value of the lands at the time the conveyance should have been made, with interest to the time of trial.

4. A contract for the conveyance of all the grantor's "stump lands" lying within one and one-half or two miles of Hay Meadow creek, not being adjacent to and along Prairie river, all in certain townships; "the intention being to convey . . . all the lands lying on and along Hay Meadow creek from below, adjacent, and above the dam on said creek, not including cedar lands on lower end of Hay Meadow or lands below the meadow; the intention being to include all stump lands opposite, above, and in the vicinity of the dam, . . . lands that the outlet of hauling off timber that would go to Prairie-river not to be included," — is *held* not void for uncertainty.

APPEAL from the Circuit Court for *Lincoln* County.

The case is stated in the opinion.

For the appellant there was a brief by *Curtis & Curtis*, and oral argument by *H. H. Curtis* and *S. U. Pinney*. To the point that courts of equity will not decree specific performance in the case of stale or suspicious claims, they cited, in addition to cases referred to in the opinion, *Walker v. Jeffreys*, 1 Hare, 348; *Heaphy v. Hill*, 2 Sim. & S. 29; *Pigg v. Corder*, 12 Leigh, 69; *Madox v. M'Quean*, 3 A. K. Marsh. 400; *Boston & M. Co. v. Bartlett*, 10 Gray, 384; *White v. Bennett*, 7 Rich. Eq. 260.

For the respondent there was a brief by *Bump & Hetzel*, and oral argument by *E. L. Bump*.

ORTON, J. This is an action for specific performance, brought by the plaintiff, *Harrison Combs*, against *Walter A. Scott*, trustee of the estate of Thomas B. Scott, deceased, and his heirs, as defendants, of the following contract, viz.:

"May 1, 1882. In consideration of one dollar and other

valuable considerations, to wit, settlement of all suits, actions, differences, and matters of difference, I agree to give to *Harrison Combs*, of Applington, Iowa, on or before July 1, 1882, a good and sufficient deed in fee-simple of all my right, title, and interest of, in, and to the stump lands which I now own, lying within one and one-half miles of Hay Meadow creek, in Lincoln county, Wisconsin, not being adjacent to and along Prairie river, all in town thirty-two in ranges six and seven, and town thirty-three in ranges six and seven; the intention being to convey to said *Combs* all the lands lying on and along Hay Meadow creek from below, adjacent, and above the dam on said creek, not including cedar lands on lower end of Hay Meadow or lands below the meadow; the intention being to include all stump lands opposite, above, and in the vicinity of the dam of *Combs*, on Hay Meadow creek, lands that the outlet of hauling off timber that would go to Prairie river not to be included. [Signed]     THOMAS B. SCOTT. [Seal.]

"In presence of D. W. McLEOD."

The plaintiff alleged in his complaint that he demanded a conveyance of said lands of Thomas B. Scott in his lifetime, and that he refused so to convey the same; and that he demanded a conveyance of the same of the defendant *Walter A. Scott*, the trustee of said estate, and that he also refused so to do; and that he has no adequate remedy at law for the breach of said contract, and that said lands have greatly increased in value since the breach thereof; and that he owns a mill in the vicinity of said lands, built for the purpose of manufacturing the timber thereon, which will be greatly depreciated in value in case said lands are not conveyed to him. The plaintiff also alleged the location and description of said lands according to the terms of the contract to consist of certain forty forty-acre tracts lying in townships 32 and 33, ranges 6, 7, and 9, in Lincoln county, Wisconsin, appended to the complaint.

The defendant *Walter A. Scott*, as such trustee, answered said complaint, and alleged that said contract was incomplete, and that it was intended thereby that the plaintiff and Thomas B. Scott should thereafter select and locate said lands, and agree to such selection, and that the plaintiff neglected to cause such selection to be made for more than four years, and until the death of said Scott, and that now it is impossible to ascertain what lands were intended by said contract. He denied that said list of lands, so appended, contained the lands contemplated by the agreement, excepting, perhaps, about seven forty-acre tracts in township 32, in range 6; and alleged further, that he is ignorant of many of the facts alleged in the complaint, and that it is now impossible, by reason of the death of his father, Thomas B. Scott, to execute said memorandum, and that the plaintiff ought not to have specific performance of the same, on account of his laches and unreasonable delay in attempting to enforce the same.

On the trial both parties introduced testimony to show what lands were intended as "stump lands," and what lands came within the boundaries mentioned in the contract, and the testimony relating thereto was quite contradictory, but the circuit court found, upon what appears to have been, perhaps, a preponderance of the testimony, and as correctly and accurately as practicable and possible, that certain twenty-nine of said forty-acre tracts were the lands within the intent and meaning of said contract; and rendered judgment that the defendant *Walter A. Scott*, as such trustee, convey the same to the plaintiff. From that judgment this appeal is taken.

The objection to this judgment that has peculiar force, and makes the strongest appeal to a court of equity, is that specific performance ought not to have been adjudged in this case on account of the laches and unreasonable delay of the plaintiff in bringing his suit. The contract is dated

May 1, and was to be performed July 1, 1882. Thomas B. Scott died October 7, 1886, and this action was commenced in April, 1888. These lands, July 1, 1882, when the contract was to have been performed, according to the testimony of the plaintiff himself were of the value of only $10 for each forty-acre tract, and at the time of the trial they were worth from twenty to fifty times as much, or from $200 to $500 for each forty-acre tract. The timber on these lands has become much more valuable by the long delay, and a railroad has been built and is in operation through these lands, and the country generally has been greatly improved since July 1, 1882. The plaintiff has never taken any care of the lands, and has neglected to pay any taxes on them, and has allowed many of them to be sold for taxes; and Thomas B. Scott, in his life-time, paid all the taxes on them, and redeemed them from previous sales for taxes; and the defendant, as trustee, has paid all the taxes since the death of Thomas B. Scott, at an expense of many hundred dollars,— many times as much as the value of the lands when the contract was made.

The enforcement of the contract at maturity would have been of merely nominal expense and damage to Thomas B. Scott, but will now impose an enormous claim upon his estate of many thousands of dollars. There was a delay of over four years while Thomas B. Scott was living, and nearly two years since, before bringing the suit, and without extenuation or excuse. It would be difficult to find a case in the books of greater change in the situation and value of the lands and the circumstances material to the relief, occasioned by the delay, or in which specific performance has ever been granted under such circumstances. Although it may not be impossible to select, locate, and identify the lands within the intention of the contract, it has certainly been rendered much more difficult and uncertain by the death of one of the parties whose personal

knowledge would seem to be requisite, if not necessary, to determine what lands were meant by "stump lands," and the meaning of the other unusual conditions of the contract. The material testimony of Thomas B. Scott has been utterly lost by the delay. He refused to convey the lands, and could do no more than to await the suit of the plaintiff for the specific performance or for the breach of the contract. The plaintiff waited until the statute of limitations had nearly run on the contract before bringing his suit.

"It is a settled principle that specific performance of a contract of sale is not a matter of course, but rests entirely in the discretion of the court, upon a view of all the circumstances." Chancellor KENT, in *Seymour v. Delancey*, 6 Johns. Ch. 222. "A matter not of absolute right in the party, but of sound discretion in the court." 1 Story's Eq. Jur. § 769. "Specific performance will not be decreed when for any reason it would be inequitable. 'It is an application to sound discretion.'" Chief Justice RYAN, in *Williams v. Williams*, 50 Wis. 311. "The jurisdiction · . . ·. is not compulsory upon the court, but the subject of discretion." Lord ERSKINE, in *Radcliffe v. Warrington*, 12 Ves. 331. The learned counsel of the appellant has cited in his brief numerous authorities to the same effect, but the principle is elementary, and the above authorities are sufficient.

In consideration of the peculiar circumstances of this case, we cannot but think that it would be an abuse of sound discretion to grant such relief. "Unreasonable delay in bringing suit for the specific performance of a contract to convey will be a defense to the relief, especially where the other party has made improvements in the mean time, *or the property has greatly increased in value.*" *Johns v. Norris*, 22 N. J. Eq. 102. The delay of only about two years was held sufficient to defeat the action in *Haughwout v. Murphy*, 21 N. J. Eq. 118, and *Merritt v. Brown*, 21

N. J. Eq. 401. Where one party to the contract has notified the other party that he will not perform it, by refusing to convey as in this case, acquiescence in this by the other party, by a comparatively brief delay in enforcing his right, will be a bar to this remedy. *McDirmid v. McGregor*, 21 Minn. 111. Change in the circumstances of the parties, and in the situation of the subject matter of the contract, the destruction of evidence, and the death of one of the parties to the contract, who if living could make clear what his successor might not be able to explain, are mentioned in *Anthony v. Leftwich*, 3 Rand. (Va.), 238, as reasons for denying the relief. In *Ruff's Appeal*, 117 Pa. St. 319, a railroad had been built, which brought the lands within reach of market, and greatly enhanced their value, and some of the lands had been sold, and the plaintiff laid by for years while these changes were going on. It was held inequitable to decree specific performance. That was very much like this case. The lands have been sold for taxes, and yet the plaintiff waited until they became vastly enhanced in value by railroad and other improvements. Specific performance will not be enforced if for any reason it is inequitable to do so. *Williams v. Williams*, 50 Wis. 311. The following authorities enforce the principle that laches and unreasonable delay in bringing suit will defeat an action for specific performance of a contract to convey. Pom. Spec. Perf. §§ 407, 408, and cases cited; Fry, Spec. Perf. §§ 1072, 1078, 1079; *Eads v. Williams*, 4 De Gex, M. & G. 691; *Watson v. Reid*, 1 Russ. & M. 236; *Southcomb v. Bishop of Exeter*, 6 Hare, 226; *Harrington v. Wheeler*, 4 Ves. 686; *Alley v. Deschamps*, 13 Ves. 225; *McWilliams v. Long*, 32 Barb. 194; *Delavan v. Duncan*, 49 N. Y. 485; *Davison v. Associates*, 71 N. Y. 333; *Henderson v. Hicks*, 58 Cal. 364; *Taylor v. Merrill*, 55 Ill. 52; *Smith v. Lawrence*, 15 Mich. 499; *Holt v. Rogers*, 8 Pet. 420; *Preston v. Preston*, 95 U. S. 200; *State ex rel. Polk Co. v. West*, 68 Mo. 229. See other cases cited in appellant's brief.

The reasons are abundant why equitable relief should be denied in this case. The disparity in the value of the lands, of from twenty to fifty fold over their value when the contract was made or when it was to have been performed, is ample reason to leave the plaintiff to his legal remedy for the breach of the contract.

In analogy to all other like cases, as in the sale of personal property, or for breach of the covenant of seizin in deeds, the plaintiff would be entitled only to recover the consideration paid and interest, or the difference between that and the value of lands when they ought to have been conveyed, or at most, and by the most liberal rule, the value of the lands at the time of the breach of the contract. The equitable remedy in this case would be so extravagantly greater than at law that it would scarcely seem to be in the same case.

Being compelled to remit the plaintiff to his remedy at law, the rule of damages in such a case may as well be considered. The rule seems not to be uniform in the different courts. In *Loomis v. Wadhams*, 8 Gray, 557, a case much like this, where the lands had to be selected, the rule was that the plaintiff might recover the value of the lands that might have been selected at the time the conveyance ought to have been made. Where the vendor acted in bad faith in refusing to convey on account of the enhanced value of the land, the damages were the difference between the contract price and the enhanced value when the conveyance should have been made. 1 Sedg. Dam. top p. 368; *Baldwin v. Munn*, 2 Wend. 399; *McNair v. Compton*, 35 Pa. St. 23. In *Key v. Key*, 3 Head, 448, the rule was the consideration paid and interest, whether the vendor acted in bad faith or not. The rule in the supreme court of the United States is the price of the land as settled by the contract at the time of its breach. *Hopkins v. Lee*, 6 Wheat. 109. This is in analogy to the sale of personal property.

In *Gale v. Dean*, 20 Ill. 320, the rule was the value of the land at the time of the ,breach of the contract. It would seem that in the majority of cases the rule is the consideration money and interest, or the difference between the consideration and the value of the land when it should have been conveyed. It would be fruitless to examine the cases to any greater extent. In cases of property consideration, or cases where the consideration is other than money, or *barter* contracts, the value of the land at the time of the breach ·is the rule from necessity, and as approximating nearer to what the plaintiff has lost. *Brigham v. Evans*, 113 Mass. 538.

The rule in such a case as this has not been settled in this state. For non-delivery of chattels, the damages are their value at the time when they should have been delivered, and interest to the time of trial. *Ingram v. Rankin*, 47 Wis. 406. In *Hall v. Delaplaine*, 5 Wis. 206, it was a contract to convey, but with some peculiar features, and the rule was the consideration and interest. In *Yenner v. Hammond*, 36 Wis. 277, the penalty was fixed in the contract, but Chief Justice RYAN discusses the rule in such cases, and leaves the question open whether, in some cases, the vendee may recover damages in excess of the consideration and interest. The rule, so far as it has been considered by this court is, unquestionably, that nothing in excess of the consideration and interest can be recovered, or perhaps I ought to say that such is the general rule. This rule is in harmony with cases of breach of the covenant of seizin. *Rich v. Johnson*, 2 Pin. 88; *Messer v. Oestreich*, 52 Wis. 684. In this case the consideration is very small and indefinite. The contract is based on a final settlement of suits and other matters between the parties. The learned counsel of the appellant has well said in his brief that "of course the amount claimed in these suits would afford no criterion as to the amount the plaintiff was to receive," or, I may add,

Combs vs. Scott.

that it was understood by the parties he did receive, by the contract. The best, if not the only, criterion of that amount, would seem to be the value of the lands at the time the contract was made, or when the deed was to be made, which would be the same thing; for there is no evidence that their value had changed in the mean time. That would be the most favorable rule to the plaintiff that could be adopted in this case. Such a rule, we have seen, has been sanctioned in many cases, and, if applied to this case, must stand as an exception to what I understand is the general rule already established by this court, in consequence of the impossibility of ascertaining with any certainty the consideration of the contract in money or values. The real consideration must have been very small in amount, and scarcely more than nominal, for it appears that Thomas B. Scott paid the plaintiff, on such settlement, the sum of $5,000 in money. The value of the lands at the time the deed was to be made was only $10 for each forty acres, or $290 in gross, according to the testimony of the plaintiff himself. That sum, and interest thereon to the time of the trial, is all the compensation in money the plaintiff is entitled to recover, and of this *he*, at least, has no reason to complain.

The question remains, What can be done with this suit? The usual practice would be to dismiss this complaint, and leave the plaintiff to proceed in an action at law to recover his compensation in money for the breach of the contract by the defendant. But it seems that the statute of limitations has already run on the contract, and the plaintiff has no remedy at law. We have concluded, therefore, that the circuit court ought to retain this suit in equity, to do complete justice between the parties.

The usual rule in equity is, if the court cannot grant the relief prayed, to grant such relief as the party is entitled to upon the facts, and in cases of specific performance, if for

any reason the title cannot be conveyed, to hold the case for compensation to the plaintiff. Story's Eq. Jur. §. 19, and cases there referred to. *Hall v. Delaplaine*, 5 Wis. 206. But in this case the court deems it inequitable to adjudge the conveyance of the land, notwithstanding the defendant is able to convey. This is an unusual case for retaining jurisdiction in equity to grant compensation, but there does not appear to be any reason why it may not be done as well as in cases of inability of the defendant to convey, on the well-known principle that a court of equity, having obtained jurisdiction for one purpose, may retain it for another, to give full relief, or to do justice between the parties, pertinent to the facts of the case. "When the impossibility of a specific performance is disclosed at the hearing, and the suit was brought by the plaintiff in ignorance of such fact, the court will award the remedy of damages." Pom. Eq. Jur. § 1410, and note. In *Hopkins v. Gilman*, 22 Wis. 476, a bill was filed for specific performance of an agreement to arbitrate and to execute a lease, and the court held that such relief could not be granted. The present chief justice says in his opinion: "Now, although the facts alleged are insufficient to justify a decree for specific performance, yet we think a court of equity may retain the suit for the purpose of awarding compensation for the value of the improvements. Undoubtedly an action for damages for non-performance of the contract would be the usual remedy. But must this suit be dismissed, and the plaintiff turned over to that remedy alone? It seems to us not, but that the court, having acquired jurisdiction of the cause, should provide and grant any relief consistent with the case made by the complaint and embraced within the issue;" citing *Tenney v. State Bank*, 20 Wis. 152; *Leonard v. Rogan*, 20 Wis. 540; *Greason v. Keteltas*, 17 N. Y. 491; and *Barlow v. Scott*, 24 N. Y. 40. We think this case comes within the principle and practice of that case, and may be retained for

the purpose of awarding compensation as above determined. The circuit court applied the same principle in giving compensation to the plaintiff for one forty-acre tract, which had been sold and conveyed for nonpayment of taxes, but in doing so adopted a rule of damages unsupported by any authority, by giving the plaintiff the present value thereof.

The present attitude of this case was not anticipated sufficiently for the counsel to argue or cite authorities upon the above question, but to save time and expense, and make a full disposition of the case in this court, and determine the mandate to be sent to the circuit court, we have concluded to decide all questions necessary to a full disposition of the case. We think that the selection and location of the lands, and the identification thereof, made by the finding of the circuit court, should be taken as the lands within the meaning of the contract, and $10 for each forty-acre tract thereof should be taken as the value of said lands at the time when a conveyance thereof was to be made according to the contract, and interest thereon from that time to the time of the trial, as full compensation and damages for the breach of said contract by the said Thomas B. Scott, deceased, and by the defendant as trustee of his estate, and judgment should be rendered accordingly.

But this, we think, should be left optional with said defendant, or to have a new trial to determine what lands are within the intent and meaning of said contract, and the value thereof on the 1st day of July, 1882, the time fixed in said contract for the conveyance thereof.

We do not think that the contract is so uncertain that it cannot be executed or enforced, and we think that the findings of the circuit court as to the lands embraced in the contract, and the value thereof at $10 for each forty-acre tract at the time aforesaid, are supported by the evidence, and are as nearly correct as practicable. It is doubtful if the

result of another trial to determine the same facts would be of any advantage to either party. But inasmuch as the defendant contends that the finding of what lands are embraced within the contract is not supported by the evidence, and as the retaining of the suit for damages to avoid the operation of the statute of limitations, and the rule of damages established, are favorable to the plaintiff, we have concluded to make a new trial in the case optional with the defendant.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to render judgment for the plaintiff in accordance with this opinion, or to grant a new trial, at the option of the defendant, to determine the above facts, viz.: (1) What lands are embraced in the contract; and (2) their value on the 1st day of July, 1882; and to render judgment accordingly.