McLENNAN, Appellant, vs. CHURCH and others, Respondents.

*May 5—May 23, 1916.*

*Vendor and purchaser: Breach of contract by vendor: Specific performance: Equity: Legal relief: Fraudulent collusion to break contract: Liability: Measure of damages.*

1. One who contracts for the purchase of land has the right to rely upon his vendor's either having the title or procuring it so as to carry out his promise.
2. Where an action has been commenced in good faith to obtain equitable relief, and it subsequently appears that such relief cannot or ought not to be granted, but plaintiff is shown to have suffered a remediable wrong in the transaction forming the groundwork of the action, entitling him to be compensated by money damages, the court may, and where justice clearly requires it should, retain the cause and afford such relief, and make the same efficient by providing for a recovery as in an ordinary legal action or by provisions appropriate to a judgment for equitable relief, as may be best suited to the circumstances of the particular case.
3. Although the facts of a case warrant only legal relief and were known to the plaintiff when he commenced his action for equitable relief, the court may in such action grant the legal relief, where the constitutional right of trial by jury would not be unduly prejudiced.
4. Fraud in law is remediable as well as fraud in fact.
5. A third person who, knowing of a contract for the sale of land and knowing the facts which showed that such contract had not lapsed, offered the owners a higher price for the land and there-

by induced the breaking of said contract and a sale and convey-
ance to himself, was guilty of a fraud upon said vendee, even
though he ignorantly supposed that a mere default of the latter
had terminated his contract rights.

6. The breaking of such contract was an unlawful act rendering all
who concerted together to that end liable for the damages caused
thereby to the vendee.

7. Under the circumstances stated, the third person who obtained a
conveyance of the land from the owners merely took their place
and acquired no greater rights in the land than they had, as
against the vendee named in said contract.

8. The contract in this case being for the sale of two tracts of land
and being signed by and binding upon the owner of one tract
only, specific performance could not be enforced; but in an ac-
tion therefor the court could give judgment, against all the par-
ties responsible for the breach of the contract, for the vendee's
damages caused by such breach.

9. The vendee's recovery in such case should not be limited to the
amount of purchase money he had paid and interest thereon, but
should equal his entire interest in the contract, including the
reasonable value of the land to him over what he owed thereon.

10. The damages must be determined as of the time of the breach of
the contract, and neither the use of the land thereafter nor the
use of money tendered by the vendee under the contract and
which remained idle is to be considered.

11. Ordinarily, the damages recoverable for breach of a land contract
by failure to convey, over and above payments made, is the dif-
ference between the contract price and the market value at the
time of the breach, with interest to the date of the judgment.

12. Full compensatory damages are recoverable for the breach of a
land contract where the vendor refuses to convey according to
his promise and there is any element of bad faith involved, or
where he did not have the title when he contracted but took his
chances of obtaining it.

13. Where the breach is of a tortious character the liability therefor
extends to such damages as are the natural and ordinary conse-
quences of the act, regardless of whether or not such damages
were in contemplation by the parties at the time of making the
contract as the probable result of a breach of it.

14. Where at the time of the breach of a contract to sell land for
$4,200 the vendee therein had contracted to sell it to a third per-
son for $5,200, and the breach was the result of collusion between
the owners of the land and said third person, who purchased
from such owners for $4,900, the value of the land to the vendee
at the time of the breach must, in computing his damages, be
deemed to have been $5,200.

APPEAL from a judgment of the circuit court for Polk county: MARTIN L. LUECK, Judge. *Modified and affirmed.*

Action for specific performance of a land contract.

The following is, in substance, the findings of fact made by the trial court, and indicates the nature of the evidence and of the issues raised by the pleading:

1st. On October 11, 1912, defendants *L. F. Church* and wife contracted in writing to sell plaintiff, for $4,200, and convey to him by March 1, 1913, the south half of the northeast quarter of section 31, town 32, range 15, west, in Polk county, Wisconsin.

2d. About the contract date, plaintiff paid on the agreement $674. January 22, 1913, he paid, at said defendants' request, $21.16 taxes on the southwest quarter of the northeast quarter of said land, and, at defendant *Ray Church's* request, $12.71 taxes on the other forty.

3d. At the date of the contract, plaintiff knew said *Ray Church* owned the first mentioned forty and that in November, 1912, defendants *L. F. Church* and his wife executed a deed of both forties to plaintiff and left it with said *Ray Church,* expecting it would be executed by him and delivered to plaintiff by March, 1913, upon the balance back on the contract being paid, but it was not acknowledged by *L. F. Church* and wife nor signed by *Ray Church,* as plaintiff well knew.

4th. After the deed was signed by *L. F. Church,* he removed to Minnesota and plaintiff caused some plowing to be done on the land without the knowledge or consent of *Ray Church.*

5th. In December, 1912, plaintiff, at *Ray Church's* request, paid off a mortgage on the latter's land at an expense of $523.75, expecting he, in due time, would convey the land under the contract. February 22, 1913, plaintiff, at *L. F. Church's* request, paid off a mortgage on the latter's land at an expense of $320, expecting that he intended to convey said

land as he had agreed, and paid $4 to bring the abstract down to date.

6th. Defendant *Ray Church,* until March 6, 1913, induced plaintiff to believe that the aforesaid deed would be executed and delivered in consummation of the land contract, and, so, neglected to make due tender of the balance due thereon and demand such delivery.

7th. February 18, 1913, plaintiff contracted in writing to sell the land to defendant *Curby* for $5,200, of which $100 was paid down.

8th. About March 25, 1913, when *Curby* expected to pay up on his contract and go into possession of the land, he was informed by plaintiff that he was unable to get title thereto from the *Churches* and, April 6th, thereafter, said *Curby* surrendered his contract and received back the down payment, advising plaintiff that he had acquired title to the land from the *Churches,* as the fact was, he having purchased of them at $4,900.

9th. *Curby* did not intend to wrong plaintiff. He made his purchase believing that plaintiff's contract with the *Churches* had expired; but he had knowledge of facts requisite to charge him with such information as plaintiff could have given him upon inquiry in respect to the matter.

10th. About March 6, 1913, *L. F. Church* obtained the aforesaid deed he had signed for plaintiff, and then *Ray Church* informed plaintiff that he had lost all rights under his contract by reason of delay.

11th. Shortly after April 1, 1913, plaintiff duly tendered to *Curby* $2,683.79 and demanded a conveyance of the premises, presenting an instrument for execution to that end, which tender and demand were refused. Said *Curby* was then in possession of the premises under his deed from the *Churches* which had been duly recorded.

12th. When the deed was made to *Curby* he mortgaged the premises to *L. F. Church* for $3,000 of the purchase money which he owes.

13th. The annual rental value of the premises is $250.

Upon such facts the court held this: Plaintiff is not entitled to specific performance of his contract. He is entitled, as to *Ray Church,* to have the mortgage, which he paid off at said *Church's* request, revived. He is entitled to judgment against *L. F. Church* for $1,555.87 paid out on account of his contract, with interest on the sums composing the aggregate from the time he paid the same, and to have the judgment made a lien upon the premises in question prior to the $3,000 mortgage given by *Curby* for purchase money. *Curby,* as to the *Churches,* is entitled to pay off said judgment for $1,555.87 and interest and to be credited therewith on his mortgage indebtedness and to have the mortgage securities deposited with defendants' attorneys subject to the direction of the court for his protection. Payment of the $1,555.87 and interest as aforesaid shall relieve the premises of any claim of plaintiff.

Judgment was rendered accordingly with provision as to costs, except the aggregate of the personal judgment was fixed at $1,801.49 and was made a lien superior to the $3,000 mortgage upon one forty-acre tract, the title to which was in *L. F. Church* at the time he contracted with plaintiff.

Plaintiff appealed, claiming that he should have specific performance as prayed for, or be made as good as he would have been had he been permitted to carry out his contract to sell the premises to *Curby.*

For the appellant there was a brief by *Kennedy & Yates,* and oral argument by *W. T. Kennedy.*

For the respondents there was a brief signed by *C. C.* and *A. E. Coe,* and oral argument by *Arthur E. Coe.*

MARSHALL, J. The first complaint made on behalf of appellant is that the court erred in finding that, at the time of making the contract with *L. F. Church,* plaintiff knew *Ray Church* held the title to one forty of the land. That does not seem to be material, so we will pass the question of whether

the finding has support in the evidence.   *L. F. Church* con-
tracted to sell both forties to appellant.   That he might prop-
erly have done and expected to perform by procuring the title
to the forty which was in *Ray Church* before maturity of the
agreement or at such maturity procure co-operation of *Ray
Church* to enable him to consummate his promise.   Appel-
lant, obviously, had a right to rely upon his executory vendor
either having the title or procuring it so as to carry out his
promise.   The trial court probably thought the circumstance,
as found, was material to whether appellant was so warranted
in appealing to equity for relief as to be vital to the question
of whether he could recover damages of a legal nature in the
action in case of relief by judgment for specific performance
not being proper.

It is not the law, as seems to have been thought, and as
counsel for respondents suggest, that in all cases where spe-
cific performance is sought and is not obtainable because of
facts known to the plaintiff when he commenced his action
therefor, that the court cannot or should not grant other re-
lief by way of compensation, even though it be such as would
be a proper subject of an action at law for damages.   There
are decisions along that line, as *Combs v. Scott,* 76 Wis. 662,
45 N. W. 532, cited to our attention by counsel for respond-
ents; but they do not indicate the limitation of the rule on the
subject.   It may be broadly stated thus: In case of an action
having been commenced in good faith to obtain equitable re-
lief, and it subsequently appearing that such relief cannot, or
ought not to be, granted, but the facts disclosed by the evi-
dence show that plaintiff has suffered a remediable wrong in
the transaction forming the groundwork of the action, enti-
tling him to be compensated by money damages, the court may,
and where justice clearly requires it under the circumstances,
should retain the cause and afford such relief, and make the
same efficient by provisions for a recovery as in an ordinary
legal action or as are appropriate to a judgment for equitable
relief, as may be best suited to the circumstances of the par-

ticular case.   *Stevens v. Coates,* 101 Wis. 569, 78 N. W. 180;
*Gates v. Paul,* 117 Wis. 170, 94 N. W. 55; *Knauf & Tesch
Co. v. Elkhart Lake S. & G. Co.* 153 Wis. 306, 141 N. W.
701.

The cases cited and many others which might be referred
to leave no manner of doubt as to the extent of the doctrine
above mentioned as it has been applied in recent years.   In
the first case this language was used:

"The rule applies where a cause of action in equity once
existed, but from the happening of some event it no longer
exists, or *a person, in good faith believing he has a cause of
action in equity, alleges facts accordingly, yet fails as to some
essential element on the trial because it never existed, but,
nevertheless, establishes a good cause of action for recovery
at law.*"

In the next case this was held:

"If one *sues in equity in good faith* and fails to establish
his cause but shows a state of facts entitling him to recover at
law, the court, having rightfully obtained jurisdiction for a
proper purpose, may retain the cause and grant just such re-
lief as upon the facts the plaintiff appears entitled to, whether
at law or in equity."

In the last case the rule was thus stated in respect to the
precise point here involved:

"The mere circumstance of itself that appellant knew the
facts when the action was commenced would not require a dis-
missal because of facts not being established warranting equi-
table relief if, notwithstanding, good cause for legal relief
was shown.   Having properly acquired jurisdiction, in such
a case, a court of equity has very broad power to wind up the
entire controversy appearing from the pleadings and evidence,
whether legal or equitable relief, or both, be required."

Under our judicial system, there are no distinctions be-
tween actions at law and suits in equity.   We have only the
civil action of the Code as an instrumentality to redress or
prevent wrongs, triable with or without a jury according to
whether the nature of the relief demanded is legal or equi-

table.    There is but one court and one form of action; there-
fore, up to the point where the constitutional right of trial by
jury would be unduly prejudiced by going further, there is
no want of power to grant legal relief in an action commenced
to secure equitable relief only, and the practice.to grant such
relief, in the interest of a speedy and economical settlement
of controversy has been so progressive that it can no longer
be properly said that where the facts of a case warrant only
legal relief and were known to the plaintiff when he com-
menced his action for equitable relief, the court will not,
should not, or cannot afford the former.    Though a person
may know the facts entitling him only to legal relief when he
commences his action for equitable relief, he may be excus-
ably mistaken and invoke that judicial remedy without any
design, or there being reasonable ground to suspect a design,
to thereby invade his adversary's right of trial by jury, and
the ends of justice can best be attained by finally terminating
the litigation in the pending action.    In such a case there is
no want of jurisdiction to retain the cause for that purpose.
In many such cases there is no dispute about the facts.    If it
were dismissed and a new action brought for legal relief, in
the finality, the controversy would turn on questions of law.

The foregoing does not need support by citation of prece-
dents.    In most, or in all, cases where legal relief is granted
in an action for equitable relief, legal issues are involved ap-
propriate to an action of a legal nature; so that was never,
necessarily, regarded as going to the jurisdiction of the court
to grant the latter.    It was not so regarded before the consti-
tution was adopted guaranteeing the right of trial by jury and
such guaranty did not change the situation.    *Stilwell v. Kel-
logg,* 14 Wis. 461; *Dane Co. v. Dunning,* 20 Wis. 210.    The
holdings to the effect that where the facts entitling the plaint-
iff to only legal relief were known to him when he commenced
his action for equitable relief, the court will not grant the for-
mer, followed an ancient judicial rule which it was perfectly

competent for the court to modify so as not to exclude cases commenced in good faith, and with reasonable ground therefor, to obtain one form of relief when another form only is obtainable, and it has been so extended as we have indicated.

Complaint is made because of the finding that defendant *Curby* purchased the land of the *Churches* in good faith without any intention of defrauding appellant.

*Curby* knew when he negotiated with the *Churches* and dealt with them that plaintiff held the contract in question, and knew all the circumstances requisite to charge him with knowledge that such contract had not lapsed. The fact that he did not know the legal effect of such circumstances, and ignorantly supposed that a mere default of appellant terminated his contract rights, and in that state of mind dealt with the *Churches,* may relieve him from any taint of moral turpitude, but not of remediable responsibility. Fraud in law is remediable as well as fraud in fact. It was certainly a fraud on appellant for *Curby* and the *Churches* to collude, as they evidently did, to consummate a sale to *Curby* and thus to rob appellant of the value of his bargain under his contract. With knowledge of the obligation to appellant under such contract, *Curby* offered the *Churches* an advance upon the price named therein, as an inducement to *L. F. Church* to break his agreement and to sell to him. He was improperly held guiltless of any fraudulent intent. The breaking of the contract was an unlawful act rendering all who concerted together to that end liable for the damages caused thereby to appellant. *Martens v. Reilly,* 109 Wis. 464, 84 N. W. 840; *White v. White,* 132 Wis. 121, 111 N. W. 1116; *Hull v. Doheny,* 161 Wis. 27, 152 N. W. 417; *Ditberner v. Bess, ante,* p. 264, 157 N. W. 817.

Did the trial court err in holding that appellant was not entitled to specific performance of the *L. F. Church* contract by *Curby?* From what has been said, it is clear that *Curby* merely took the place of the *Churches;* having taken title to

the land with knowledge of all the facts, he came into possession of no greater right as against appellant than they had. According to the facts found, appellant could not have successfully maintained specific performance against them because the one who signed the contract to sell the premises only owned one of the forties.  Whether *Ray Church* became a party to the contract was not found and no specific objection is presented in the argument of counsel for appellant on that score.   We must assume that the trial court was of the opinion he did not become such party so that specific performance could be enforced against him.   There is testimony tending to prove the contrary but it is not clear and satisfactory.   In any event, counsel only raise the question, in general, as to whether, on the facts found, the court erred in not granting specific performance as against *Curby,* for the two forties of land.   On that it is considered that the answer must be in the negative because there is no finding to the effect that appellant's contract was binding 'on the owners of both forties. The most the court could do under those circumstances was to grant appellant judgment for such damages as would, as fully as practicable, repair the wrong done him by the failure to convey the land according to such contract.

What has been said results in the conclusion that the court erred in limiting appellant's compensatory damages, recoverable in this action, to the money he paid out for purchase money of the land and interest to the date of the judgment, aggregating $1,801.49, and in making that the personal liability of *L. F. Church* only, and the costs a liability of him and *Ray Church.*   All were equally liable, under the circumstances, and the entire interest which appellant had in the contract according to its terms, so far as the same could be ascertained from the evidence, should have been allowed to him. That included the reasonable value of the land to him over what he owed thereon, and what was awarded to him.   What he paid out for work on the land was included in such value,

so the same need not be dealt with in the several features called to our attention. As the damages must be determined as of the time of the breach of the contract, the use of the land thereafter does not cut any figure. Neither does the use of the money which it is claimed by appellant he allowed to remain idle from the time he made the tender, which was soon after the maturity of the contract, until the termination of the litigation.

All recoverable matters seem to have been included in the judgment except the difference between what the land stood appellant at the time of the breach and what the property was then reasonably worth to him. Ordinarily, the damages recoverable for breach of a land contract by failure to convey, over and above payments made, is the difference between the contract price and the market value at the time of the breach, with interest to the date of the judgment. *Muenchow v. Roberts,* 77 Wis. 520, 46 N. W. 802; *Maxon v. Gates,* 136 Wis. 270, 116 N. W. 758; *Arentsen v. Moreland,* 122 Wis. 167, 99 N. W. 790; *Brink v. Mitchell,* 135 Wis. 416, 116 N. W. 16.

There has been much discussion in cases on this subject, yet there is no conflict but what full compensatory damages are recoverable where the vendor refuses to convey according to his promise and there is any element of bad faith involved, or he did not have the title when he contracted, but took his chances of obtaining it. In *Muenchow v. Roberts,* the court held:

"The plaintiff is entitled to recover, if at all, the full value of his bargain. The true measure of such value is the value of the land the defendant contracted to sell to him, estimated at the time the contract was broken, less what the plaintiff agreed to pay therefor. This is the general rule in this state in an action by a purchaser to recover damages for the breach of an executory contract to sell either real or personal property, where no part of the consideration has been paid."

It would be varied of course to suit the situation created by partial payment. The court recognized that there might be

exceptions to that rule.    If there are any, this case is not within them.

The above rule is based on the general principle of liability for breach of contract that the limit of recovery is such damages as may be reasonably considered to have been in contemplation by the parties at the time of making the contract as the probable result of a breach of it.    Where the breach is of a tortious character, the liability extends to such as are the natural and ordinary consequence of the act, whether they might have been in the contemplation aforesaid or not.    That is elementary.    Here there was such tortious element, in that the three persons concerted together to break the contract.

The natural and ordinary consequence of the wrongful conduct of defendants was to prevent appellant from consummating his deal with *Curby*.    For that purpose the land was worth to appellant, at the time of the breach, $5,200.    That *Curby* would have taken the land at that price had *L. F. Church* kept his contract, is clear from the evidence.    When the former found that the latter was willing to break his contract and to sell to him direct, he induced appellant to accept a surrender of the $5,200 contract and, straightway, entered into the transaction which led to this litigation, and divided the profits with his co-conspirators.    So it is considered that the value of the land to appellant at the time of such transaction was $5,200.

At the time indicated the cost of the land to appellant, as we have computed it, taking the amount due on the contract with the payments which had been made, making up the $1,555.87, mentioned in the findings, with interest to such time, was $4,276.02, or $923.98 less than he would have obtained for the land had it not been for the wrongful conduct of defendants.    Those figures may not be exactly right, but they are as nearly so as can be ascertained from the evidence with reasonable certainty.    That sum fairly represents the value of appellant's bargain under his contract, which he lost

McLennan v. Church, 163 Wis. 411.

as the natural consequence of the breach of it. Such sum with interest thereon down to the date of the judgment, making in all $1,051.69, should have been awarded appellant in addition to the $1,801.49, making in all $2,853.18.

The judgment appealed from must be modified so as to be against all the defendants for damages, and the costs as heretofore taxed, and so such damages will be $923.98 for plaintiff's loss of his bargain, with interest thereon from the date of the breach of contract to the date of the judgment, in addition to the $1,555.87 for money paid out, and $245.62 interest thereon, making the aggregate $2,853.18, and by such other changes in the judgment as will make all its parts harmonize with the change of $1,801.49 damages to the larger amount, and so the judgment for such damages will be enforceable by execution against all defendants and be a lien upon one forty of land superior to the $3,000 mortgage, as originally provided,—the rights of all parties to be protected as to such mortgage and otherwise also as originally provided. The judgment might be made otherwise enforceable, but since the manner indicated will, as it seems, fully remedy the wrong to plaintiff, it is thought best not to disturb the disposition of the matter by the trial court any further than is necessary to accomplish that end. Upon the case reaching the trial court, the judgment may be recast and re-entered, as of its original date, so as to harmonize, in terms, with this decision.

*By the Court.*—The judgment appealed from is modified as indicated in the opinion and affirmed as modified, plaintiff to have the right to a re-entry of it in the court below, as of its original date, so it will be in form, as so modified. Plaintiff is awarded full costs in this court.